# ATTACHMENT A

## List of Unpublished Decisions

1. *Stewart v. Holland Acquisitions, Inc.*, No. 2:15-cv-01094, 2021 WL 1037617 (W.D. Pa. Mar. 18, 2021).

2. *Solis v. Makozy*, No. 09-cv-1265, 2012 WL 1458232 (W.D. Pa. Apr. 27, 2012)

3. *Solis v. Koresko*, No. 09-cv-988, 2013 WL 4594847 (E.D. Pa. Aug. 29, 2013)

4. *Solis v. Caro*, No. 11-cv-6884, 2012 WL 1230824 (N.D. Ill. Apr. 12, 2012)

5. *You Fit, Inc. v. Pleasanton Fitness, LLC*, No. 8:12-cv-1917, 2012 WL 12905650 (M.D. Fl. Oct. 19, 2012)

6. *In re Halvorson*, No. 8:18-cv-00525, 2018 WL 6728484 (C.D. Cal. Dec. 21, 2018)

7. *Roberts Plan Corp. v. American Intern. Group Inc.*, No. 09-cv-200, 2009 WL 2448509 (D.N.J. Aug. 10, 2009)

8. *Harve Benard Ltd. v. Nathan Rothschild, K.I.D. Intern., Inc.*, No. 02-cv-4033, 2003 WL 367859 (S.D.N.Y. Feb. 19, 2003)

9. *Scott v. New York Administration v. Children's Servs.*, 678 F. App'x 56 (3d Cir. 2017)

10. *Pennsylvania by Shapiro v. Think Finance, LLC*, No. 14-cv-7139, 2018 WL 1620981 (E.D. Pa. Apr. 4, 2018)

11. *Walsh v. Great Atlantic Graphics, Inc.*, No. 21-cv-3280, 2022 WL 4331205 (E.D. Pa. Sept. 19, 2022)

**Al Stewart v. Holland Acquisitions, Inc., Not Reported in Fed. Supp. (2021)**

2021 WL 1037617

2021 WL 1037617
Only the Westlaw citation is currently available.
United States District Court, W.D. Pennsylvania.

Milton AL STEWART, Acting
Secretary of Labor, United States
Department of Labor, Plaintiff,

v.

HOLLAND ACQUISITIONS,
INC., d/b/a Holland Services,
and Bryan Gaudin, Defendants.

2:15-cv-01094
|
Signed 03/18/2021

**Attorneys and Law Firms**

Andrea C. Luby, US Department of Labor, Office of the Regional Solicitor, Philadellphia, PA, Jennifer L. Bluer, John M. Strawn, U.S. Department of Labor, Office of the Solicitor, Philadelphia, PA, for Plaintiff.

Richard L. Etter, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Pittsburgh, PA, David J. Drez, III, Jacob T. Fain, Wick Phillips Gould & Martin, LLP, Fort Worth, TX, Susan N. Eisenberg, for Defendants.

**OPINION**

Mark R. Hornak, Chief United States District Judge

**\*1** On February 8, 2021, Defendants filed a "Suggestion of Bankruptcy," giving notice to the Court that on February 4, 2021, Defendant Holland Acquisitions, Inc. "filed a Voluntary Petition under Chapter 7 of the United States Bankruptcy Code" and suggesting that "the automatic stay provisions of section 362 of the Bankruptcy Code apply to the instant case by operation of the filing of this Voluntary Petition," as to both Defendants. (ECF No. 250.) The Court directed the parties to file statements of position as to what they believed the impact, if any, the Suggestion of Bankruptcy would have on this Court's proceedings, which the parties timely filed. For the reasons that follow, the Court denies Defendants' Suggestion of Bankruptcy to the extent that it suggests that the automatic stay provision of 11 U.S.C. § 362(a) applies to this action.

The Court concludes that this proceeding falls within § 362(b)(4)'s police and regulatory power exception to the automatic stay and will thus proceed in this Court.

**I. BACKGROUND**

In determining the impact, if any, of Holland Acquisitions, Inc.'s voluntary bankruptcy petition on this case, the Court pulls the pertinent facts from (1) the Secretary of Labor's Second Amended Complaint (ECF No. 57) and (2) from the parties' subsequent briefing discussing the automatic stay's applicability. (ECF Nos. 252 and 253.) As a brief background, the Secretary of Labor alleges that Defendants repeatedly and willfully violated provisions of the Fair Labor Standards Act ("FLSA") of 1938, as amended, 29 U.S.C. § 201 et seq., by failing to compensate employees for overtime work in violation of §§ 7 and 15(a) of the FLSA and by failing to preserve adequate records of its employees as well as the wages, hours, and other conditions of employment in violation of §§ 11(c) and 15(a)(5). The Secretary seeks to enjoin Defendants pursuant to § 17 of the FLSA and further requests that the Court enter judgment against Defendants in the form of back wages and liquidated damages under § 16(c).[1]

---

[1] Under the FLSA, as amended, 29 U.S.C. § 201 et seq., the FLSA sections relied upon in the Secretary's enforcement action in this case, namely §§ 16(c) and 17, are synonymous with the statute's amended provisions §§ 216(c) and § 217. Under 29 U.S.C. § 216(c), the "Secretary may bring an action in any court of competent jurisdiction to recover the amount of unpaid minimum wages or overtime compensation and an equal amount as liquidated damages[.]" Under 29 U.S.C. § 217, the "district courts ... shall have jurisdiction, for cause shown, to restrain violations of section 215 of this title, including in the case of violations of section 215(a)(2) of this title the restraint of any withholding payment of minimum wages or overtime compensation found by the court to be due to the employees under this chapter[.]"

**II. DISCUSSION**

When a party files for bankruptcy, an automatic stay is triggered under 11 U.S.C. § 362(a)(1). Congress, however, carved out several exceptions that limit the automatic stay's reach, one of which is the police and regulatory power exception outlined in § 362(b)(4). Sections 362(b) and (b)(4) provide, in relevant part, as follows:

**Al Stewart v. Holland Acquisitions, Inc., Not Reported in Fed. Supp. (2021)**

2021 WL 1037617

**\*2** The filing of a petition ... does not operate as a stay ... of the commencement or continuation of an action or proceeding by a governmental unit ... to enforce such governmental unit's ... police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's ... police or regulatory power[.]

First, there is no dispute between the parties that the Secretary of Labor, acting on behalf of the United States Department of Labor, is a "governmental unit" as defined by the statute. Second, "the Secretary is not seeking the *enforcement* of a judgment, but the entry of judgment against defendant," a distinction that puts the exception on the table. *See Solis v. Makozy*, No. 09-01265, 2012 WL 1458232, at \*2 (W.D. Pa. Apr. 27, 2012) ("*Makozy*") (emphasis in original) (discussing legislative history of 11 U.S.C. § 362(b)(4)).

The Third Circuit applies two "overlapping" and "complementary" tests to determine whether the governmental unit's action advances the unit's "police or regulatory power" such that the exception to the automatic stay would be triggered. In that regard, "courts have applied ... the pecuniary purpose test and the public policy test." *In re Nortel,* 669 F.3d 128, 139 (3d Cir. 2011). The pecuniary purpose test focuses on "whether the government primarily seeks to protect a pecuniary governmental interest in the debtor's property, as opposed to protecting the public safety and health." *Id.* The public policy test "asks whether the government is effecting public policy rather than adjudicating private rights," which analyzes whether the action's primary purpose is to "promote public safety and welfare or to effectuate public policy." *Id.* at 140.

Defendants argue that "the Secretary's claims against Holland are not covered by the police power exception to the automatic stay because they seek primarily to protect the private rights ... of certain individuals." (ECF No. 253, at 1.) As support for their position, Defendants accurately note that the "Third Circuit has not addressed whether the police power exception applies to FLSA claims asserted by the Secretary of Labor," and then direct the Court's attention to *Chao v. Hospital Staffing Services, Inc.*, 270 F.3d 374 (6th Cir. 2001) ("*Hospital Services*"), a case decided by the United States Court of Appeals for the Sixth Circuit. (*Id.* at 4.) In *Hospital Services*, the Sixth Circuit held that the police and regulatory power exception did not apply to a § 216(c) enforcement action brought by the Secretary of Labor for alleged violations

of §§ 206, 207, and 215(a). *Hospital Services*, 270 F.3d at 379. Specifically, the Sixth Circuit concluded that "[a] pure § 216(c) suit[, through which the Secretary may seek unpaid overtime and liquidated damages] ... does no more than ascertain the rights of a private individual and obtain judgment for that individual's benefit[, and thus] is a prime example of a suit by a governmental unit to adjudicate private rights." *Hospital Services*, 270 F.3d at 391. Defendants ask this Court to apply that same reasoning in this case.

On the other hand, the Secretary asserts that this suit is "litigation by a government agency acting under its police and regulatory power," and is thus outside the automatic stay's scope. (ECF No. 252, at 3 (quoting 11 U.S.C. § 362(b)(4)).) In sum, the Secretary argues that the automatic stay does not cover this action and the relief sought because the "government is bringing suit to promote public policy by enforcing a remedial statute." (*Id.*) The Secretary also contends that the remedy sought here relates "principally to the government's public policy interest in the general welfare of the employees[.]" (*Id.* (citing *United States v. Nicolet, Inc.*, 857 F.2d 202, 207 (3d Cir. 1988)).)

**\*3** With due respect to and regard for the reasoning of our Sixth Circuit appellate colleagues in *Hospital Services*, Defendants' argument to apply the principles of the Sixth Circuit's majority opinion in *Hospital Services* does not carry the day here. In the Court's judgment, the *Hospital Services* analysis of the purposes of FLSA litigation by the Secretary of Labor would in the circumstances present here yield a result that runs contrary to that obtained by the persuasive application of legal principles previously applied by this Court and other courts in this Circuit. And critically, to extend the automatic stay so as to prevent the Secretary from seeking an entry of judgment for back wages and liquidated damages,[2] hand in hand with prospective injunctive relief, all as part and parcel of the Secretary of Labor's enforcement of the FLSA via federal court litigation, would likewise substantially impair the core remedial purposes of the FLSA. Rather, the Court's survey of applicable law from within our Circuit supports the position advanced by the Secretary: that this FLSA enforcement action falls within the police and regulatory exception to the automatic stay. *See Makozy,* 2012 WL 1458232, at \*1; *see also In re Iezzi,* 504 B.R. 777, 785 n.8 (E.D. Pa. 2014) (citing *Makozy,* 2012 WL 1458232, at \*1) ("[G]overnmental proceedings designed to enforce legal standards imposed upon actors in the economic marketplace have been held to fall within the § 362(b)(4) exception to the automatic stay."). As noted in the Secretary's

**Al Stewart v. Holland Acquisitions, Inc., Not Reported in Fed. Supp. (2021)**

2021 WL 1037617

briefing and as suggested by the Third Circuit, the legislative history of § 362(b)(4) contemplated that the police and regulatory power exception would apply to a "governmental unit ... attempting to fix damages for violation of [police or regulatory laws]," *In re Nortel*, 669 F.3d at 141, and further, that "the exception extends to permit an injunction and enforcement of an injunction [as well as] to permit the entry of a money judgment." *Makozy*, 2012 WL 1458232, at *2 (quoting S. Rep. No. 95–989 at 49 (1978)).

2      As the Court noted in *Makozy*, the exception to the automatic stay would permit the entry of a judgment in this Court but would nonetheless appear to require its enforcement to occur in the Bankruptcy Court. 2012 WL 1458232, at *4.

Moreover, the FLSA's preamble makes plain that it is exactly the type of remedial statute intended to advance public safety and welfare as well as promote a public policy that goes to concerns beyond only the payment of wages earned and payable by statute to one or more discrete individuals: "[T]he underlying and declared purpose of FLSA is to eradicate from interstate commerce conditions detrimental to 'the maintenance of a minimum standard of living necessary for health, efficiency, and general well-being of workers.' " *Marshall v. Western Union Tel. Co.*, 621 F.2d 1246, 1250 (3d Cir. 1980) (quoting 29 U.S.C. § 202(a)(1)); *see Williams v. Genex Servs., LLC*, 809 F.3d 103, 104 (4th Cir. 2015) (reasoning that the FLSA's declared purpose is necessarily connected to its enforcement action mechanisms requiring employers to pay "overtime compensation to employees who work more than forty hours during a seven-day work week").[3]

3      And this line of reasoning has been adopted by other District Courts and by several Bankruptcy Courts. *Acosta v. JM Osaka, Inc.*, No. 17-00559, 2017 WL 11505008, at *2, *3 (E.D. Va. Sept. 15, 2017); *Solis v. SCA Rest. Corp.*, 463 B.R. 248, 257 (E.D.N.Y. 2011); *Chao v. Mexico City Rest., Inc.*, No. 05-00905, 2005 WL 4889254, at *2 (S.D. Ind. Dec. 22, 2005); *Chao v. BDK Indus., L.L.C.*, 296 B.R. 165, 169 (C.D. Ill. 2003); *Martin v. Chambers*, 154 B.R. 664 (E.D. Va. 1992); *Donovan v. Timbers of Woodstock Rest., Inc.*, 19 B.R. 629, 630 (N.D. Ill. 1981). This is also of a kind with the Third Circuit's conclusion that an employment discrimination lawsuit brought on behalf of a discharged employee under Title VII of the Civil Rights Act of 1964 was exempted from the automatic stay by the police and regulatory power exception. *E.E.O.C. v. Hall's Motor Transit Co.*, 789 F. 2d 1011, 1014 (3d Cir. 1986).

In this Court's judgment, the *Hospital Services* decision accords too little weight to the role and responsibility of the Secretary of Labor in enforcing the provisions of the FLSA by instituting this type of enforcement action in this Court. While it is true that successful litigation by the Secretary will often result in the award of backpay and liquidated damages to workers who had been deprived of legally mandated compensation (and that could be one outcome here), a key purpose of even those lawsuits is to bring a culpable employer into compliance with the FLSA going forward. The award of what may turn out to be sizeable money damages is intended to foster that result. And more than that, the possibility of prospective injunctions and the award of ancillary backpay and liquidated damages serves to deter others from failing to fulfill their wage-payment duties under the FLSA, and to signal to the marketplace the critical importance of employers' compliance with that vital federal statute. As Justice Harlan noted for the Supreme Court in *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288 (1960), the FLSA's enforcement by the Secretary of Labor pursuant to § 17 was the means by which "Congress sought to foster a climate in which compliance with the substantive provisions of the [FLSA] would be enhanced." *Id.* at 292.

**\*4** Here, the claims for relief in the Secretary's Second Amended Complaint seek more than the award of backpay and liquidated damages, but also seek an equitable judgment pursuant to § 17 permanently enjoining and restraining any future FLSA violations by Defendants. To reduce the goal of this lawsuit and others like it by characterizing it only as a lawsuit seeking to "ascertain the rights of a private individual and obtain judgment for that individual's benefit" and as a "prime example of a suit by a governmental unit to adjudicate private rights," *Hospital Services*, 270 F. 3d at 392, inaccurately minimizes both the litigation role of the Secretary of Labor under the FLSA and the purposes of such litigation in ways that neither the FLSA nor the Bankruptcy Code provide or require.[4]

4      In stating those observations, the *Hospital Services* court cited to *Wirtz v. C & P Shoe Corp.*, 336 F. 2d 21 (5th Cir. 1964), which recognized that in such litigation, the "Government becomes an active protagonist for the *double purpose* of protecting private interests and vindicating public rights." *Id.* at 30 (emphasis added).

In *In re Nortel*, the Third Circuit pointed out that "[i]t is unclear whether the government action must meet both [the pecuniary purpose and public policy tests] to fall within the police power exception." 669 F.3d 128, 139 n.12 (3d

**Al Stewart v. Holland Acquisitions, Inc., Not Reported in Fed. Supp. (2021)**

2021 WL 1037617

Cir. 2011). Defendants argue that the Third Circuit, although it has not decided the issue, would likely require that the government action satisfy both the pecuniary purpose and public policy tests.[5] (ECF No. 253, at 3 (quoting *In re Nortel,* 669 F.3d at 140 (citing *Hospital Services,* 270 F.3d at 385)).) Whether the pecuniary purpose and public policy tests are conjunctive, disjunctive, or overlapping is an issue that the Court does not and need not decide because it does not alter the Court's ultimate determination. As noted above, this Court has previously held that an FLSA enforcement action such as this one, where one remedial outcome is the recovery of backpay and liquidated damages on behalf of individual workers falls within the police and regulatory power exception. *See Makozy,* 2012 WL 1458232, at *1. This Court agrees with the reasoning and result reached by Judge Conti in *Makozy*. This is particularly so in that this is not an action in which the Secretary primarily seeks to protect a pecuniary governmental interest in the property of the debtor as opposed to protecting the public's health and safety as expressed in the protections of the FLSA. And while there would be a monetary benefit to workers deprived of earned compensation if the Secretary prevails in this case, the principal role of the Secretary in maintaining this lawsuit is to vindicate the public policy central to the FLSA.

5    To support Defendants' argument that the government action must meet both the pecuniary purpose and public policy tests for the exception to the stay to apply, they contend that the Third Circuit's "reliance on [*Hospital Services*] and its use of the disjunctive 'or' " as well as the use of the word "either" indicate "that the police power exception is inapplicable unless both tests are met." (ECF No. 253, at 3.) Generally, a test applied disjunctively means that where a test includes two prongs or sections, only a showing of one is required. *Matter of Cardone,* 103 B.R. 504, 504 (D. Del. 1989) (explaining that where a section was "written in the disjunctive," there was "no requirement that both subsections be satisfied."). No matter how Defendants interpret the effect of the words "or" and "either" on the overall construction and application of these tests, the Court ultimately understands Defendants' argument as asserting that the government action needs to satisfy both the pecuniary purpose and public policy tests for the exception to the automatic stay to apply. As the Court explains above, resolving that interpretive question is not necessary here,

as in the Court's judgment, both tests are satisfied as to this enforcement action.

**\*5**  As such, this Court agrees "that FLSA enforcement actions fall within the police and regulatory exception to the automatic stay." *Makozy,* 2012 WL 1458232, at *1. Thus, the Secretary's claims against Holland Acquisitions, Inc. fall within the exception and are not stayed by the corporation's voluntary bankruptcy petition. Because the Court concludes that the Bankruptcy Code's automatic stay does not extend to the Secretary's enforcement action against debtor Holland Acquisitions, Inc., the Court does not and need not determine whether the Code's automatic stay would have also extended to the Secretary's claims against Gaudin had the stay applied as to Holland.[6]

6    Defendants argue that the Court should stay the Secretary's claims against individual Defendant Mr. Bryan Gaudin because the automatic stay may extend to a non-debtor in select situations: (1) "where the debtor may be said to be the real party defendant and when a judgment against the third-party defendant will be in effect a judgment or finding against the debtor"; or (2) where "a debtor and non-debtor are so bound by statute or contract that the liability of the non-debtor is imputed to the debtor by operation of law." (ECF No. 253, at 6 (internal quotation marks omitted) (first referring to decisions by the Tenth and Fifth Circuits and then referring to decisions by the Fourth Circuit and U.S. District Court for Northern District of Texas for support).) As stated above, the Court concludes that the automatic stay does not extend to the Secretary's enforcement action against debtor Holland Acquisitions, Inc., and as such, Defendants request to extend the stay to Gaudin is moot.

### III. CONCLUSION

Because the Secretary's claims against Defendant Holland Acquisitions, Inc. fall within the scope of 11 U.S.C. § 362(b)(4)'s police and regulatory power exception, the automatic stay does not halt the proceedings in this Court. The Court denies Defendants' Suggestion of Bankruptcy (ECF No. 250) and concludes that the proceedings in this Court will continue in due course as to both Defendants.

### All Citations

Not Reported in Fed. Supp., 2021 WL 1037617

**Al Stewart v. Holland Acquisitions, Inc., Not Reported in Fed. Supp. (2021)**

2021 WL 1037617

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S.
Government Works.

2012 WL 1458232
Only the Westlaw citation is currently available.
United States District Court,
W.D. Pennsylvania.

Hilda L. SOLIS, Secretary of Labor, United
States Department of Labor, Plaintiff,

v.

Gregory MAKOZY, Defendant.

Civil Action No. 09–1265.
|
April 27, 2012.

**Attorneys and Law Firms**

Albert W. Schollaert, United States Attorney's Office,
Pittsburgh, PA, Jordana L. Greenwald, U.S. Department of
Labor, Office of the Solicitor, Philadelphia, PA, for Plaintiff.

Robert O. Lampl, Pittsburgh, PA, for Defendant.

*MEMORANDUM OPINION AND ORDER*

CONTI, District Judge.

 **\*1** Pending before the court is a motion for reconsideration
(ECF No. 80) filed by plaintiff Hilda L. Solis, Secretary of
Labor, United States Department of Labor (the "Secretary"
or "plaintiff") on October 21, 2011 requesting that the court
reconsider its September 28, 2011 order (ECF No. 79) closing
the above-captioned case. The court ordered the statistical
closing of the case upon the filing of a suggestion of
bankruptcy by defendant Gregory Makozy ("Makozy" or
"defendant").

The Secretary filed this action to enjoin Makozy from
violating various provisions of the Fair Labor Standards Act,
29 U.S.C. § 201, *et seq.,* and for a judgment against Makozy
for alleged unpaid back wages due to his former employees.
(Compl. (ECF No. 1) at 1–6.) Plaintiff argues in support of
her motion for reconsideration that the court's application of
the bankruptcy automatic stay to this action was erroneous,
because this case falls within the police and regulatory power
exception to the automatic stay.[1]

1   Section 362(b)(4) of the Bankruptcy Code, 11 U.S.C.
§ 362(b) (4), provides an exception to the bankruptcy
automatic stay for actions by a governmental unit to
enforce its police or regulatory power:
   [The automatic stay does not apply to]
   commencement or continuation of an action or
   proceeding by a governmental unite ... to enforce
   such governmental unit's or organization's police
   and regulatory power, including the enforcement
   of a judgment other than a money judgment,
   obtained in an action or proceeding by the
   governmental unit to enforce such governmental
   unit's or organizations's police or regulatory power.
   *Id.*

The purpose of a motion for reconsideration is "to correct
manifest errors of law or fact or to present newly discovered
evidence. *Max's Seafood Café v. Quinteros,* 176 F.3d 669, 677
(3d Cir.1999). A motion for reconsideration under Federal
Rule of Civil Procedure 59(e)[2] must therefore rely on one of
three grounds: (1) an intervening change in the law; (2) the
availability of new evidence; or (3) the need to correct clear
error of law or prevent manifest injustice. N. *River Ins. Co. v.
CIGNA Reinsurance Co.,* 52 F.3d 1194, 1218 (3d Cir.1995).
A motion for reconsideration is not properly grounded in
a request for a district court to rethink a decision it has
already rightly or wrongly made. *Williams v. Pittsburgh,* 32
F.Supp.2d 236, 238 (W.D.Pa.1998). Litigants are cautioned
to "evaluate whether what may seem to be a clear error of
law is in fact simply a point of disagreement between the
Court and the litigant." *Waye v. First Citizen's Nat'l Bank,*
846 F.Supp. 310, 314 n. 3 (M.D.Pa.1994) (internal quotation
omitted). Motions for reconsideration should not relitigate
issues already resolved by the court and should not be used to
advance additional arguments which could have been made
by the movant before judgment. *Reich v. Compton,* 834
F.Supp. 753, 755 (E.D.Pa.1993) *aff'd in part, rev'd in part,* 57
F.3d 270 (3d Cir.1995).

2   Although the Secretary did not explicitly state the civil
rule under which she was filing this motion, the court will
construe it as one filed under Rule 59(e).

The Secretary's motion falls under the third ground. Because
the court closed this case without eliciting argument or
briefing from the parties, the Secretary's motion does not
impermissibly seek to relitigate a point of disagreement or
to advance an argument she neglected to advance before
judgment. Instead, she asserts a new argument, not presented
to the court before the entry of judgment.

The Secretary is correct that cases filed by the Department of Labor to enforce the wage and hour regulations of the FLSA fall within the regulatory and police powers exception. *E.g., Solis v. SCA Restaurant Corp.,* 463 B.R. 248 (E.D.N.Y.2011) (holding that the Secretary's action to enjoin violations of the FLSA, as well as to obtain a money judgment for liquidated damages in the amount of unpaid overtime, fell within the regulatory and police powers exception to the automatic stay, whether the court applied the public policy test, the pecuniary interest test, or the pecuniary advantage test); *see Chao v. BDK Indus., L.L.C.,* 296 B.R. 165, 169 (C.D.Ill.2003); *see also In re Nortel Networks, Inc.,* 669 F.3d 128, 141 (3d Cir.2011) ("According to the legislative history, § 362(b)(4) 'excepts commencement or continuation of actions and proceedings by governmental units to enforce police or regulatory powers. Thus, where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay.' " (quoting S.Rep. No. 95–989 at 49 (1978))).

**\*2** Makozy argues that this case is similar to *Ohio v. Kovacs,* 469 U.S. 274, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985). There, the Supreme Court held that an attempt by the State of Ohio to enforce a state court injunction (which required the defendants to clean up a hazardous waste disposal site) by appointing a receiver to take possession of the defendant's property and other assets was a "debt," properly dischargeable in bankruptcy. The issues presented in this case are substantially different from those presented in *Kovacs.* There, the court was required to determine the applicability of § 101(4) of the Bankruptcy Code, 11 U.S.C. § 101(4), which defines a "claim." *Kovacs,* 469 U.S. at 707. A "debt" subject to discharge in bankruptcy is a liability on a "claim." 11 U.S.C. § 101(12). Here, the court is determining the applicability of the automatic stay, and exceptions thereto, to claims which are, once reduced to judgment, indisputably debts within the Bankruptcy Code. The issue of the applicability of the automatic stay was not before the Court in *Kovacs.* 469 U.S. at 276 n. 2 (noting that the issue of the violation of the automatic stay had previously been remanded to the Court of Appeals for the Sixth Circuit, who had at that time not yet taken action on the issue). The Court explicitly provided that "[t]he automatic stay provision does not apply to suits to enforce the regulatory statutes of the State, but the enforcement of such a judgment by seeking money from the bankrupt—what the Court of Appeals for the Sixth Circuit concluded was involved in this case—is another

matter." *Id.* at 285 n. 11. *Kovacs* is therefore inapplicable to the situation presently before this court. The Secretary is not seeking the *enforcement* of a judgment, but the entry of judgment against defendant. The Secretary concedes that the enforcement of a judgment in this court would impermissibly violate the automatic stay, and further concedes that if she were to obtain judgment here, she would be required to enforce it in the bankruptcy court.

The Secretary's position is consistent with the legislative history of the police and regulatory exception, which clearly states that "the exception extends to permit an injunction and enforcement of an injunction, and to permit the entry of a money judgment, but does not extend to permit enforcement of a money judgment." S.Rep. No. 95–989 at 49 (1978). "Since the assets of the debtor are in the possession and control of the Bankruptcy Court, and since they constitute a fund out of which all creditors are entitled to share, enforcement by a governmental unit of a money judgment would give it preferential treatment to the detriment of all other creditors." *Id.*

Defendant concedes that the court has jurisdiction to determine the applicability of the stay, but argues that the court should refrain from exercising that jurisdiction in deference to the bankruptcy court's jurisdiction over the matter. Defendant relies on *In re Baldwin–United Corporation Litigation,* 765 F.2d 343, 347 (2d Cir.1985). In that case, the district court in New York had enjoined a third-party defendant (which was also a chapter 11 debtor in bankruptcy proceedings in Ohio) from applying to the bankruptcy court for any relief against any of the New York third-party plaintiffs. The court of appeals concluded that the injunction was an improper use of the district court's equitable authority because it interfered with the bankruptcy court's own equitable powers. *Id.* at 347–48. The court of appeals reasoned that the district court injunction would impermissibly prohibit the bankruptcy court from invoking its broad authority under § 105 of the Bankruptcy Code to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. *Id.* at 348 (citing 11 U.S.C. § 105).

**\*3** Contrary to defendant's argument, it is appropriate for nonbankruptcy courts to determine the applicability of the automatic stay to proceedings before them. *Brock v. Morysville Body Works, Inc.,* 829 F.2d 383, 385–87 (3d Cir.1987) (" '[w]hether the stay applies to litigation otherwise within the jurisdiction of a district court or court of appeals

is an issue of law within the competence of both the court within which the litigation is pending ... and the bankruptcy court supervising the reorganization.' " (quoting *Baldwin–United,* 765 F.2d at 347)). In *Brock,* the Court of Appeals for the Third Circuit held that deference to the bankruptcy forum's determination would "only occasion delay," *id* . at 386, and that the nonbankruptcy forum "share[s] concurrent jurisdiction with the bankruptcy court over [the applicability of the automatic stay] and should decide [that issue], *id.* at 384. *See also United States v. Nicolet, Inc.,* 857 F.2d 202, 204 (3d Cir.1988) (reviewing a district court's ruling that the automatic stay did not apply to environmental cleanup proceedings before the district court, without commenting on the propriety or permissibility of the district court ruling upon the issue or deferring to the bankruptcy court, and noting that "this precise issue could have come to us as the result of a bankruptcy judge's order, had the United States applied in that forum for a lifting of the automatic stay").

Here, the court is not issuing an injunction similar to the one in *Baldwin–United,* has not limited the bankruptcy court from exercising its broad equitable authority, and does not prevent defendant from seeking appropriate equitable relief in the bankruptcy forum. *See Brock,* 829 F.2d at 386–87 (noting that the bankruptcy court has the authority to stay nonbankruptcy proceedings under § 105(a), even where the nonbankruptcy court has previously determined that the proceedings are excepted from the automatic stay, when the bankruptcy court determines based on the particular equities in the case that allowing the proceedings to continue would inequitably damage the bankruptcy estate). Furthermore, the law of this circuit establishes that it is appropriate for the district court to determine that applicability of the automatic stay to proceedings before it.

Because this case clearly falls within the regulatory and police powers exception, it was clear error of law for the court to close this case by application of the automatic stay. The court will, therefore, grant the motion for reconsideration. The case will be reopened, but if judgment is obtained in favor of plaintiff, all enforcement proceedings will be transferred to the appropriate bankruptcy forum.

## ORDER

**AND NOW,** this 27th day of April 2012, upon consideration of parties' filings and upon review of this court's order for statistical closing (ECF No. 79) dated September 28, 2011, for the reasons set forth above,

**IT IS HEREBY ORDERED** that the motion for reconsideration is **GRANTED.**

 **\*4 IT IS FURTHER ORDERED** that the above-captioned case shall be reopened for the limited purposes of determining whether judgment should be entered against defendant Gregory Makozy.

**IT IS FURTHER ORDERED** that, if judgment is entered against defendant Gregory Makozy in this case, it will only be permitted to be enforced in the appropriate bankruptcy forum.

## All Citations

Not Reported in F.Supp.2d, 2012 WL 1458232

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 4594847
Only the Westlaw citation is currently available.
United States District Court,
E.D. Pennsylvania.

Hilda SOLIS, Secretary of Labor,
United States Department of Labor
v.
John J. KORESKO, V, et al.

Civil Action No. 09–988.
|
Aug. 29, 2013.

**Attorneys and Law Firms**

Linda M. Henry, Ashton S. Phillips, Joanne Roskey, U.S. Dept. of Labor Office of the Solicitor, Philadelphia, PA, for Hilda Solis.

John J. Koresko, V, Koresko Law Firm, Bridgeport, PA, pro se.

*MEMORANDUM*

McLAUGHLIN, District Judge.

**\*1** This action by the Secretary of Labor arises out of alleged violations of fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., in connection with a multiple-employer employee death benefit arrangement run by attorney John Koresko through a number of entities controlled by him.[1] That same death benefit arrangement is at issue in nine other cases pending before this Court.[2]

1　The defendants in this action, which include those entities, are Koresko Law Firm, P.C., John J. Koresko, V, Jeanne Bonney, Koresko & Associates, P.C., PennMont Benefit Services, Inc., the Regional Employers' Assurance Leagues Voluntary Employees' Beneficiary Association Trust, the Single Employer Welfare Benefit Plan Trust, and Penn Public Trust (the "Koresko Parties").

2　*See, e.g., Regional Employers' Assurance Leagues Voluntary Employees' Beneficiary Association Trust v.*

*Castellano,* No. 03–6903 (E.D.Pa.); *Larkin v. Penn Public Trust,* No. 11–7421 (E.D.Pa.); *Oswood v. Penn Public Trust,* No. 13–0666 (E.D.Pa.).

On July 23, 2013, six of the Koresko entities filed for bankruptcy pursuant to Chapter 11 in the U.S. Bankruptcy Court for the Eastern District of Pennsylvania.[3] Individual defendants John J. Koresko, V and Jeanne Bonney have not filed for bankruptcy. The Koresko Parties then filed a suggestion of bankruptcy on July 25, 2013 with regard to four cases before this Court. The Department of Labor ("DOL") stated its position that the case should proceed because the DOL's action is exempt from the automatic stay that resulted from the bankruptcy proceedings. The Court agreed, stating in a July 29, 2013 Order that the above-captioned case could proceed under the governmental regulation exception to the automatic stay, under 11 U.S.C. § 362(b)(4). The other three actions in which the suggestion of bankruptcy was filed were placed in civil suspense in response to the automatic stay.

3　The six bankruptcy debtors are Regional Employers' Assurance Leagues Voluntary Employees' Beneficiary Association Trust, Single Employer Welfare Benefit Plan Trust, Penn Public Trust, PennMont Benefit Services, Inc., Koresko & Associates, P.C., and Koresko Law Firm, P.C.

On July 30, 2013, the Koresko Parties filed a motion for reconsideration of the Court's July 29, 2013 Order. Although the Koresko Parties' motion is styled as a motion for reconsideration, the Court will consider its arguments anew because this Court's July 29, 2013 Order was granted without full briefing by the parties.

The Koresko Parties' motion for reconsideration attached a brief filed in the Bankruptcy Court by proposed counsel for the debtors and debtors-in-possession, who is not counsel in this action. That brief made two arguments relevant to this Court as to why the DOL's action should be stayed: (1) the regulatory and police powers exception to the automatic stay does not apply because the DOL's case fails the pecuniary interest/public policy test; and (2) the Plans are not covered under ERISA, so the DOL's action is not properly within the DOL's enforcement or regulatory scope.[4] The Court will deny the motion.

4　This Court does not address the third issue raised by the Koresko Parties' attached brief, regarding whether the Bankruptcy Court should stay this proceeding under 11 U.S.C. § 105(a).

A. *Exemption from Automatic Stay for Enforcement of Police or Regulatory Power*

11 U.S.C. § 362(b)(4) provides an exception to the automatic stay following the filing of a bankruptcy petition for the "commencement or continuation of an action or proceeding by a governmental unit ... to enforce such governmental unit's ... police or regulatory power."

To determine whether this exception applies, courts have applied two "related, and somewhat overlapping" tests: the pecuniary purpose test and the public policy test. *In re Nortel Networks, Inc.,* 669 F.3d 128, 139 (3d Cir.2011) (quoting *Lockyer v. Mirant Corp.,* 398 F.3d 1098, 1108 (9th Cir.2005)). The pecuniary purpose test asks whether the government primarily seeks to protect a pecuniary governmental interest in the debtor's property, as opposed to protecting the public safety and health. The public policy test asks whether the government is effectuating public policy rather than adjudicating private rights. If the purpose of the law is to promote public safety and welfare or to effectuate public policy, then the exception to the automatic stay applies. If, on the other hand, the purpose of the law is to protect the government's pecuniary interest in the debtor's property or primarily to adjudicate private rights, then the exception is inapplicable. *Id.* at 139–40 (citing *Chao v. Hosp. Staffing Servs., Inc.,* 270 F.3d 374, 385 (6th Cir.2001)).

**\*2** The Third Circuit has held that regulatory proceedings related to environmental hazards, health and safety violations, and employment discrimination all fall within the police power exception to the automatic stay. *Nortel,* 669 F.3d at 139–40 (citing cases). Courts in other circuits have held that a case brought by the federal government to redress ERISA violations is an action to enforce the government's police or regulatory powers and thus excepted from the application of the automatic stay. *See e.g., Solis v. Caro,* No. 11 C 6884, 2012 WL 1230824, at \*3–5 (N.D.Ill. Apr.12, 2012); *Chao v. Bennett,* No. 97–CV0148, 2006 WL 1994838, at \*1 (N.D.N.Y. July 14, 2006); *Chao v. Johnson,* No. H–03–5394, 2005 WL 2095109, at \*1 n. 1 (S.D.Tex. Aug.30, 2005); *Metzler v. Bennett,* No 97–CV–0148, 1998 WL 187454, at \*4–5 (N.D.N.Y. Apr.15, 1998); *Martin v. Friedman,* 133 B.R. 609, 611–12 (N.D.Ohio 1991); *Dole v. Hansbrough,* 113 B.R. 96, 97–98 (D.D.C.1990); *In re Incor, Inc.,* No. AZ 88–1082–AsRV, 1988 Bankr.LEXIS 2586, at \*6–7 (B.A.P. 9th Cir. Dec. 9, 1988); *McLaughlin v. Craig,* No. 4–87–189–E, 1988 U.S. Dist. LEXIS 15904, at \*3–6 (N.D.Tex. Nov. 10, 1988); *Donovan v. Porter,* 584 F.Supp. 202, 207 (D.Md.1984).

The Court finds the reasoning of these cases persuasive. In this case, the DOL is not seeking its own pecuniary interest in the debtors' property, but rather acting to further its public policy interest in enforcing the requirements of ERISA. Cf. *United States v. Nicolet, Inc.,* 857 F.2d 202, 207–210 (3d Cir.1998) (describing the pecuniary interest and public policy test for whether a government's action falls within the regulatory powers exception).

The fact that the DOL's action may benefit private employees does not convert this suit into one pursuing the pecuniary interest of private parties. The DOL is not seeking its own pecuniary interest, or the pecuniary interests of the United States, in this litigation.[5]

[5]    The Koresko Parties argue that the DOL's action is to further the IRS's and the federal Treasury's pecuniary interests in the outcome of several cases involving Plan participants that are currently pending in the Tax Court. In support of that argument, they quote a 2009 affidavit from defendant Jeanne Bonney, who in conclusory fashion states that this action helps the IRS prevail in the Tax Court. Ms. Bonney does not give any factual basis for her statements or how the action would help the IRS.

The Koresko Parties rely on *Nortel,* which held that the automatic stay applied to a U.K. Pensions Regulator's proceedings against an allegedly underfunded pension plan. *Nortel* is distinguishable from this case because there, the Third Circuit found that neither the Trustee of Nortel Networks U.K. Pension Plan or the U.K. Board of the Pension Protection Fund were governmental units, and therefore the police power and regulatory exception could not apply to their efforts. 669 F.3d at 138–139. In contrast, the DOL is a governmental unit.

The Koresko Parties also cite the Sixth Circuit's decision in *Chao v. Hospital Staffing Services,* which found that a suit filed by the Secretary of Labor passed the pecuniary interest test but failed the public policy test, and therefore did not fall within the police power exception. There, the DOL brought a "hot goods" suit against a bankruptcy trustee to prevent the movement of medical records in violation of the Fair Labor Standards Act. The Sixth Circuit held that such a suit served little public purpose because the main remedy of that suit would be to recover wages and liquidated damages, and protect the property interest held by affected employees, rather than to benefit any interest of the public. 270 F.3d at 391–93.

**\*3** In contrast, actions by the Secretary of Labor to enforce ERISA are intended to further public policy. The text of ERISA explains this policy:

> The Congress finds that ... the continued wellbeing and security of millions of employees and their dependents are directly affected by ... [employee benefit] plans; that they are affected with a national public interest; ... that owing to the lack of employee information and adequate safeguards concerning their operation, it is desirable in the interests of employees and their beneficiaries, and to provide for the general welfare and the free flow of commerce, that disclosure be made and safeguards be provided with respect to the establishment, operation, and administration of such plans; ... and that it is therefore desirable ... that minimum standards be provided assuring the equitable character of such plans and their financial soundness.

29 U.S.C. § 1001(a); *see also Dole,* 113 B.R. at 98.

B. *Applicability of ERISA*

The Koresko Parties also argue that the DOL's case does not fall within the governmental regulation exception to the automatic stay because the Plans at issue are not covered by ERISA. This argument is based on a 2009 Amendment executed by PennMont Benefit Services that eliminated non-owner-employees, a requirement for ERISA application, from the Plans.

The Court has already decided that the Plans are covered by ERISA. In its partial summary judgment opinion on August 3, 2012, the Court held that the 2009 Amendment was not valid because PennMont did not have the authority to amend the plan, because the amendment would violate another provision of the plan document prohibiting amendments that discriminate in favor of participants who are highly compensated, who are officers of the employer, or who are stockholders of the employer, and because as a policy matter, it would be contrary to the purpose of ERISA if ERISA-covered employee benefit plans could avoid subsequent enforcement of ERISA provisions that once applied by simply eliminating ERISA coverage by amendment. *Solis v. Koresko,* 884 F.Supp.2d 261, 285–90 (E.D.Pa.2012) (Docket No. 315).

The Koresko Parties' motion argues that the Court's conclusion that the 2009 Amendment was not valid was incorrect, insisting that the amendment comported with the requirements of the Plan documents and that policy considerations should not be weighed in that situation. This argument does not provide any new evidence or law to serve as a basis for reconsidering the Court's earlier order.

An appropriate Order will issue.

*ORDER*

AND NOW, this 28th day of August, 2013, upon consideration of the Koresko Parties' Motion for Reconsideration of Orders Entered on July 29, 2013 (Docket No. 449), and the opposition thereto, IT IS HEREBY ORDERED that the motion is DENIED.

IT IS FURTHER ORDERED that the parties shall file in this Court on or before 5:00 PM on September 9, 2013, a proposed schedule for completion of the outstanding depositions and a preliminary injunction hearing.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 4594847

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 1230824
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois.

SOLIS

v.

CARO et al.

No. 11 C 6884.
|
April 12, 2012.

**Attorneys and Law Firms**

Kevin M. Wilemon, Office of the Solicitor-U.S. Department of Labor, Chicago, IL, for Solis.

Nicholas C. Caro, Glenview, IL, pro se.

**STATEMENT**

[AMY J. ST. EVE](), Judge.

**\*1** Before the Court is pro se Defendant Nicholas C. Caro's ("Caro") motion to dismiss for lack of subject matter jurisdiction and improper venue. For the reasons set forth below, the Court denies Caro's motion in its entirety.

**BACKGROUND**

On September 30, 2011, Plaintiff Hilda L. Solis, Secretary of Labor, United States Department of Labor, (the "Secretary") filed a Complaint against Caro, N.C. Caro M.D., S.C. (the "Practice"), and the N.C. Caro M.D., S.C. Defined Benefit Plan (the "Plan"), alleging claims for breach of fiduciary under the Employee Retirement Income Security Act ("ERISA"), as amended, [29 U.S.C. §§ 1001, *et seq.*]() (R. 1, Compl.) The Secretary's Complaint seeks injunctive relief to redress violations, restitution from the Plan's fiduciaries, including Caro, and other equitable relief. (*Id.,* Prayer for Relief.)

The Secretary alleges the following facts. The Plan is an employee benefit plan within the meaning of ERISA § 3(3), [29 U.S.C. § 1002(3).]() (*Id.* ¶ 3.) The Practice, an Illinois corporation, created the Plan on January 1, 1999, and amended and restated it on May 29, 2007, retroactively effective as of January 1, 2007, to provide pension, disability, and death benefits to eligible employees. (*Id.* ¶¶ 3, 11.) At all relevant times, the Practice was the Plan's sponsor, the Plan's administrator, and a fiduciary of the Plan. (*Id.* ¶ 5.) Caro was the president and sole owner of the Practice, the Plan's sole trustee, a fiduciary of the plan, and a party-in-interest to the Plan. (*Id.* ¶ 6) Caro's wife, Patricia Caro, who is not a party to this litigation, was a party-in-interest to the Plan during the relevant time period. (*Id.* ¶ 9.)

Between April 27, 2006 and February 29, 2008, Caro liquidated more than $263,951.00 from the Plan's investment accounts and transferred it to accounts held in his own name, in his former medical practice's name, and in his wife's company's name. (Compl.¶¶ 13–18.) Instead of using the money to provide benefits to the Plan's participants or to pay Plan expenses, Caro used it to pay for the Practice's operating expenses and legal fees, among other things. (*Id.* ¶¶ 15–20.) The Secretary avers that in doing so, Caro breached his fiduciary duty.

On July 15, 2011, Caro filed for chapter 7 bankruptcy in the U.S. Bankruptcy Court for the Northern District of Illinois in Case Number 11–29162. (*Id.* ¶ 8.) On October 13, 2011, the Secretary filed an adversary complaint against Caro in that court, seeking to have Caro's debt to the Plan deemed non-dischargeable. *See Solis v. Caro,* Adv. No. 11–02088 (Bankr.N.D.Ill.) at R. 1.

**LEGAL STANDARD**

In light of Caro's status as a pro se party, the Court liberally construes his motion. *See [Marshall v. Knight,]() [445 F.3d 965, 969 (7th Cir.2006).]()* Caro argues that the Court should dismiss this action because it is a "core proceeding" over which the Court lacks subject matter jurisdiction and because venue is improper. Caro also moves to enjoin the case as barred by the automatic stay and discharge injunction in his bankruptcy proceeding.

**\*2** [Federal Rule of Civil Procedure ("Rule") 12(b)(1)]() provides that a party may move to dismiss an action when the court lacks subject matter jurisdiction. [Fed.R.Civ.P. 12(b)(1).]() "Federal courts are courts of limited jurisdiction and may only exercise jurisdiction where it is specifically authorized by federal statute." *[Evers v. Astrue,]() [536 F.3d 651, 657 (7th]()*

Cir.2008) (citation and quotation marks omitted). As such, "[e]nsuring the existence of subject matter jurisdiction is the court's first duty in every lawsuit." *McCready v. White,* 417 F.3d 700, 702 (7th Cir.2005). The proponent of federal jurisdiction bears the burden of establishing subject matter jurisdiction. *Meridian Sec. Ins. Co. v. Sadowski,* 441 F.3d 536, 540 (7th Cir.2006) ("[The] party that chooses federal court [must] set out the basis of federal jurisdiction and prove any contested factual allegation."); *see also Glaser v. Wound Care Consultants, Inc.,* 570 F.3d 907, 913 (7th Cir.2009) ( "The burden of proof on a 12(b)(1) issue is on the party asserting jurisdiction.").

Rule 12(b)(3) provides that a party may move to dismiss an action when it is not filed in the proper venue. Fed.R.Civ.P. 12(b)(3). If venue is improper, the court "shall dismiss [the case], or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

## ANALYSIS

### I. The Court Has Subject Matter Jurisdiction and Venue In This Court Is Proper

The Secretary asserts, and the Court agrees, that the Court has subject matter jurisdiction over this proceeding pursuant to ERISA § 502(e)(1), which provides that district courts have exclusive jurisdiction of civil ERISA actions brought by the Secretary. *See* 29 U.S.C. § 1132(e)(1). Caro does not dispute this assertion, but instead argues that, pursuant to 28 U.S.C. § 157(b) (2), the Secretary's cause of action against him is a "core proceeding" over which he contends the bankruptcy court has exclusive jurisdiction.

Core proceedings are those that arise in a bankruptcy case or under title 11. *See* 28 U.S.C. § 157(b)(1); *In re Ortiz,* 665 F.3d 906, 911 (7th Cir.2011) (citing *Stern v. Marshall,* —— U.S. ——, ——, 131 S.Ct. 2594, 2605, 180 L.Ed.2d 475 (2011)). The Seventh Circuit teaches that "[c]ore proceedings are actions by or against the debtor that arise under the Bankruptcy Code in the strong sense that the Code itself is the source of the claimant's right or remedy, rather than just the procedural vehicle for the assertion of a right conferred by some other body of law." *In re Matter of U.S. Brass Corp.,* 110 F.3d 1261, 1261 (7th Cir.1997); *see also Diamond Mortg. Corp. of Ill. v. Sugar,* 913 F.2d 1233, 1239 (7th Cir.1990) (a "proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding

that, by its nature, could arise only in the context of a bankruptcy case") (quoting *Barnett v. Stern,* 909 F.2d 973, 981 (7th Cir.1990)); *Freecrest Inv., LLC v. Privatebank & Trust Co.,* No. 10 C 8235, 2011 WL 3100882, at *2 (N.D.Ill. Jul.15, 2011) (same). In contrast, a non-core proceeding is one that "does not invoke a substantive right created by federal bankruptcy law and is one that could exist outside of bankruptcy." *Freecrest Inv.,* 2011 WL 3100822, at *2 (quoting *Barnett,* 909 F.2d at 981).

**\*3** The Secretary's Complaint is not a "core" proceeding, as it does not invoke a substantive right provided by title 11, and it is not a proceeding that could arise only in the context of a bankruptcy case. *See id.; Diamond Mortg.,* 913 F.2d at 1239. Rather, it invokes a substantive right provided by ERISA. *See In re Trans–Indus., Inc.,* 419 B.R. 21, 30 (Bankr.E.D.Mich.2009) (action brought by bankruptcy trustee against plan trustees for breach of fiduciary duty under ERISA was not a core proceeding under Section 157). *Cf. In re United Air Lines, Inc.,* 337 B.R. 904, 909–10 (N.D.Ill.2006) (proceeding to terminate plan pursuant to Title IV of ERISA is not a core proceeding).[1]

[1] Even if this was a "core" proceeding, it would not follow that the Court lacks subject matter jurisdiction. *See Gecker v. Marathon Fin. Ins. Co., Inc. RRG,* 391 B.R. 613, 614 (Bankr.N.D.Ill.2008) (although federal courts have original jurisdiction over all bankruptcy proceedings arising out of title 11, such cases are automatically referred to the bankruptcy court, and the district court may withdraw the reference, in whole or in part, any case or proceeding referred to the bankruptcy court for cause).

Venue in this Court is proper pursuant to § 502(e)(2) of ERISA, which provides that an action under ERISA may be brought in a United States district court where the plan at issue is administered. *See* 29 U.S.C. § 1132(e)(2). Defendant does not dispute that the Plan is administered in Chicago, Illinois, which is within the Northern District of Illinois.

### III. This Action Is Exempt From The Automatic Stay

Upon the filing of a bankruptcy petition, 11 U.S.C. § 362(a) (the "Automatic Stay Provision") imposes a stay on the "commencement or continuation ... of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under [title 11], or to recover a claim against the debtor that arose before the commencement

of the case under [title 11]." The Automatic Stay Provision is intended to "preserve what remains of the debtor's insolvent estate and ... provide for a systematic equitable liquidation procedure for all creditors, secured as well as unsecured, thereby preventing a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts." *Chao v. BDK Indus., L.L.C.,* 296 B.R. 165, 167 (C.D.Ill.2003) (citing *Holtkamp v. Littlefield,* 669 F.2d 505, 508 (7th Cir.1982)). The applicability of the Automatic Stay Provision is a question of law. *See NLRB v. P\*I\*E Nationwide, Inc. .,* 923 F.2d 506, 512 (7th Cir.1991) (citation omitted).

Exceptions to the Automatic Stay Provision are listed in 11 U.S.C. § 362(b). One such exception, which the Secretary contends applies in this case, is "the commencement or continuation of an action or proceeding by a governmental unit ... to enforce such governmental unit's ... police or regulatory power." 11 U.S.C. § 362(b)(4) (the "Government Proceeding Exception"). Courts narrowly construe this exception "to apply to the enforcement of ... laws affecting health, welfare, morals and safety." *Matter of Cash Currency Exch., Inc.,* 762 F.2d 542, 555 (7th Cir.1985) (citation omitted). In determining whether it applies, courts typically apply two tests: the "pecuniary purpose" test and the "public policy" test. *BDK Indus.,* 296 B.R. at 167 (citing *Chao v. Hospital Staffing Servs., Inc.,* 270 F.3d 374, 384 (6th Cir.2001)).[2]

[2]    The Seventh Circuit has not adopted either of these tests, but district courts within the Seventh Circuit have applied them in cases involving the Government Proceeding Exception. *See In re Emerald Casino, Inc.,* No. 03–CV–05457, 2003 WL 23147946, at \*5–9 (N.D.Ill.Dec.24, 2003); *BDK Indus.,* 296 B.R. at 167–69.

 **\*4** Under the pecuniary purpose test, reviewing courts focus on whether the governmental proceeding relates primarily to the protection of the government's pecuniary interest in the debtor's property, and not to matters of public safety [or public policy]. Those proceedings which relate primarily to matters of public safety are excepted from the stay. Under the public policy test, reviewing courts must distinguish between proceedings that adjudicate private rights and those that effectuate public policy. Those proceedings that effectuate public policy are excepted from the stay.

*Id.* (quoting *Hospital Staffing,* 270 F.3d at 385–86).

**A. Public policy test**

Courts have held that actions by the Secretary of Labor to enforce ERISA are "clearly intended to further an important public policy." *See In re Clifton,* 441 B.R. 44, 48 (E.D.N.C.2010) (citing *Metzler v. Bennett,* No. 97–CV–0148, 1998 WL 187454, \*4–5 (N.D.N.Y. Apr. 15, 1998); *see also Dole v. Hansbrough,* 113 B.R. 96, 98 (D.D.C.1990) ("actions brought by the Secretary [of Labor] to enforce provisions of ERISA are actions to effectuate public policy, and incidental benefits from the enforcement of the Act should not convert such enforcement from one of public policy to one characterized as an adjudication of individual rights"). Indeed, the text of ERISA explains this important policy:

The Congress finds that ... the continued well-being and security of millions of employees and their dependents are directly affected by ... [employee benefit] plans; that they are affected with a national public interest; ... that owing to the lack of employee information and adequate safeguards concerning their operation, it is desirable in the interests of employees and their beneficiaries, and to provide for the general welfare and the free flow of commerce, that disclosure be made and safeguards be provided with respect to the establishment, operation, and administration of such plans; ... and that it is therefore desirable ... that minimum standards be provided assuring the equitable character of such plans and their financial soundness.

29 U.S.C. § 1001(a). Courts have consistently held that actions by the Secretary of Labor to enforce ERISA's provisions constitute an exercise of the "police and regulatory power" contemplated in the Government Proceeding Exception. *See Clifton,* 441 B.R. at 48–49 (relying on the language of 29 U.S.C. § 1001(a) in determining that the Secretary's action against debtor for breach of fiduciary duty under ERISA fell within § 362(b)(4)); *Dole,* 113 B.R. at 97 ("[C]ourts have uniformly held that an enforcement action by the Secretary of Labor under ERISA constitutes the exercise of 'police a regulatory power' within the meaning of § 362(b)(4), and that the automatic stay provision of § 362(a) does not apply.") (citing cases); *Chao v. Morris,* No. 06–1581, 2007 WL 91613, at \*1–2 (D.Ariz. Jan.11, 2007); *Chao v. Bennett,* No. 97–CV–0148, 2006 WL 1994838, at \*1 (N.D.N.Y. July 14, 2006); *Metzler v. Bennett,* 1998 WL 187454 at \*4–5; *Martin v. Friedman,* 133 B.R. 609, 611 (N.D.Oh.1991); *Donovan v. Porter,* 584 F.Supp. 202, 206–07 (D.Md.1984). Consistent with this authority, the Secretary's action against

Caro in this case is in furtherance of effectuating the important public policy set forth in ERISA.

### B. Pecuniary interest test

**\*5** "While it is somewhat 'elusive,' courts applying the pecuniary purpose test 'must look to what specific acts the government wishes to carry out and determine if such execution would result in an economic advantage over third parties in relation to the debtor's estate.' " *See Emerald Casino,* 2003 WL 23147946, at \*8 (quoting *In re Ellis,* 66 B.R. 821, 825 (N.D.Ill.1986)). Generally, "if the focus of the police power is directed at the debtor's financial obligations rather than the [government's] health and safety concerns, the automatic stay is inapplicable." *Id.* (quoting *Ellis,* 66 B.R. at 825).

Caro argues that the Secretary's action does not fit within the Government Proceeding Exeption because she is seeking money damages for alleged past violations and is seeking to adjudicate private rights. The Secretary, however, has no pecuniary interests in Caro's bankruptcy estate-rather, any amounts she recovers will inure to the benefit of the Plan. (R. 25, Resp. at 6.); *see Martin,* 133 B.R. at 611 ("The government is claiming no pecuniary interest in [the debtor's] property. Rather, the Secretary seeks to enforce [the debtor's] fiduciary duties to the employee benefit plan under ERISA, a manifestly public purpose.").[3] Although the outcome of this proceeding may affect private interests-namely, those of individual Plan participants-that fact does not prevent the application of the Government Proceeding Exception. *See BDK Indus. .,* 296 B.R. at 168 (recognizing that actions by the Secretary of Labor often furthers both private and public interests, and noting that "[w]hen the private interests do not significantly outweigh the public benefit from enforcement," courts should recognize such actions as falling within the government's police and regulatory powers under § 362(b)(4)); *see also Dole,* 113 B.R. at 98 (rejecting the debtor's argument that the Secretary of Labor seeks to protect the government's pecuniary interests because "[a]lthough the Secretary seeks to adjudicate the rights of the Plan's beneficiaries, any monetary amounts recovered will benefit those beneficiaries, and not the government.").

[3]  Contrary to Caro's suggestion, the Secretary's action would not fall outside § 362(b)(4) even if the Secretary could obtain a pecuniary benefit from the proceeding. *See Emerald Casino,* 2003 WL 23147946, at \*8–9; *see also Alpern v. Lieb,* 11 F.3d 689, 690 (7th Cir.1993) ("The fact that the sanction is entirely pecuniary does not take it out of section 362(b)(4)"). In *Emerald* Casino, the court held that a state's action to impose a pecuniary sanction on the debtor fell within § 362(b)(4) even though it would result in a "dramatic depletion of the debtor's estate," reasoning in relevant part that the state was exercising its regulatory and police power and was not attempting to "recover a debt outside of the bankruptcy process." *Id.* at \*9.

Moreover, the Secretary's action is not "attempting to satisfy a debt outside of the bankruptcy process." *Emerald Casino,* 2003 WL 23147946, at \*9. The Secretary's request for injunctive relief and a determination of restitution amounts that Caro owes as a result of alleged violations of ERISA is consistent with the Government Proceeding Exception, pursuant to which the government may obtain injunctive relief and a determination of the amount of damages the debtor owes, but may not enforce a damage award. *See P\*I\*E Nationwide,* 923 F.2d at 512 n. 5; *see also* H.R.Rep. No. 595, 95th Cong., 2d Sess. 343, reprinted in 1978 U.S.Code Cong. & Admin. News 5963, 6299 ("where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay" and "the exception extends to permit the entry of a money judgment, but does not extend to permit enforcement of a money judgment"). Instead, the award is a claim in bankruptcy that must be adjudicated through the bankruptcy process. *P\*I\*E Nationwide,* 923 F.2d at 512 n. 5. The Secretary acknowledges as much when she states that she "will seek actual monetary recovery from Caro only in accordance with the bankruptcy process." (R. 25, Resp. at 8.)

### III. The Bankruptcy Court Has Not Issued a Discharge

**\*6** Caro argues that the Secretary's action violates the bankruptcy court's discharge injunction. A discharge in a bankruptcy proceeding "operates as an injunction against the commencement or continuation of an action ... to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2). The bankruptcy court, however, has not issued a discharge in Caro's bankruptcy case. *See In re Caro,* Case No. 11–29162 (Bankr.N.D.Ill.) at R. 33, 34 (orders granting extension of time for Trustee to file objection to discharge pursuant to 11 U.S.C. § 727 until April 16, 2012). Therefore, the Secretary's action is not barred.

## CONCLUSION

For the reasons set forth above, the Court denies Defendant Caro's motion in its entirety.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 1230824

---

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

You Fit, Inc. v. Pleasanton Fitness, LLC, Not Reported in Fed. Supp. (2012)

2012 WL 12905650

2012 WL 12905650
Only the Westlaw citation is currently available.
United States District Court, M.D. Florida,
Tampa Division.

YOU FIT, INC., et al., Plaintiffs,

v.

PLEASANTON FITNESS,

LLC, et al., Defendants.

Case No. 8:12–cv–1917–JDW–EAJ
|
Signed 10/17/2012
|
Filed 10/19/2012

**Attorneys and Law Firms**

Brad F. Barrios, Christina K. Ramirez, Kenneth George Turkel, Bajo Cuva Cohen Turkel, PA, Tampa, FL, for Plaintiffs.

John Pendleton Daly, Meredith M. Stephens, Rissman, Barrett, Hurt, Donahue & McLain, PA, Orlando, FL, Richard E. Fee, Jillian L. Feltham, Kathleen M. Wade, Fee & Jeffries, P.A., Tampa, FL, Stephen Hunter Johnson, Lydecker Diaz, Miami, FL, for Defendants.

**ORDER**

JAMES D. WHITTEMORE, United States District Judge

**\*1** Defendants Sanjiv and Sheena Chopra filed a notice of removal purporting to remove this action to the United States Bankruptcy Court for the Eastern District of California under 28 U.S.C. § 1452(a) and Fed. R. Bankr. P. 9027 (Dkt. 19). Plaintiffs moved to strike the notice (Dkt. 20). All Defendants oppose the motion (Dkts. 31, 32, 35).

The bankruptcy removal statute provides:

A party may *remove* any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, *to the district court for the district where such civil action is pending,* if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

28 U.S.C. § 1452(a) (emphasis added). The overwhelming weight of authority holds that § 1452(a) cannot be utilized to remove an action from a federal district court, and particularly not from a district court to a bankruptcy court that is not in "the district where such civil action is pending."[1] *See, e.g., LMRT Assocs., LC v. MB Airmont Farms, LLC,* 447 B.R. 470, 472–73 (E.D. Va. 2011) (attempted removal from district court to bankruptcy court in different district); *In re Hakim,* 212 B.R. 632,639 (Bankr. N.D. Cal. 1997) (same); *In re Gross Metal Prods., Inc.,* Nos. 97–30376DAS, 97–1150DAS, 97–1151DAS, 1997 WL 778756, at \*1–\*2 (Bankr. E.D. Pa. Dec. 16, 1997) (same); *Los Angeles Home–Owners Aid, Inc. v. Lundahl,* No. Civ. 05–126–E–BL–W, 2005 WL 1140649, at \*1 (D. Idaho May 13, 2005) (attempted removal from one district court to another district court under § 1452); *Doyle v. Mellon Bank, N.A.,* 307 B.R. 462, 464–65 (E.D. Pa. 2004) (attempted removal from district court to bankruptcy court in same district); *In re The Academy, Inc.,* 288 B.R. 286, 290 (Bankr. M.D. Fla. 2002) (same); *Sharp Electronics Corp. v . Deutsche Fin. Servs. Corp.,* 222 B.R. 259, 262–64 (Bankr. D. Md. 1998) (same); *In re Mitchell,* 206 B.R. 204, 209–11 (Bankr. C.D. Cal. 1997) (same); *In re Cornell & Co., Inc.,* 203 B.R. 585, 586 (Bankr. E.D. Pa. 1997) (same); *cf. In re National Developers, Inc.,* 803 F.2d 616, 620 (11th Cir. 1986) (holding action was not properly removed from state court to a bankruptcy court in a different district).[2]

[1]   Defendants argue that the express terms of § 1452(a) are not limited to actions removed from state court. Further, Fed. R. Bankr. P. 9027(a)(1) provides, "A notice of removal shall be filed with the clerk for the district and division within which is located the state or federal court where the civil action is pending." (Emphasis added). However, these provisions have been interpreted to allow removal from federal courts of national jurisdiction, such as the Court of Federal Claims or the Court of Veterans Appeals, not from federal district courts. *Quality Tooling, Inc. v. United States,* 47 F.3d 1569, 1572 (Fed. Cir. 1995); *see, e.g., In re Mitchell,* 206 B.R. 204, 211 (Bankr. C.D. Cal. 1997). Further, this argument fails to address the propriety of removing an action to a bankruptcy court in a different district.

[2]   As Defendants point out, *National Developers* interpreted 28 U.S.C. § 1478, the predecessor of § 1452. The only material difference between the statutes is that § 1478 allowed for removal "to the bankruptcy court," whereas § 1452 provides for removal "to the

**You Fit, Inc. v. Pleasanton Fitness, LLC, Not Reported in Fed. Supp. (2012)**

2012 WL 12905650

district court." This change was part of the Bankruptcy Amendments and Federal Judgeship Act of 1984, which Congress passed in response to the Supreme Court's decision that the Bankruptcy Act of 1978 was unconstitutional because it endowed non–Article III bankruptcy judges with Article III powers. *See Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982). Contrary to Defendants' suggestion, the change from "bankruptcy court" to "district court" has no effect on the Eleventh Circuit's reasoning in *National Developers.*

 **\*2** The plain language of section 1452(a) supports this construction. Moreover, "removal" contemplates removal of a state court case to the federal district court within which the state court action is pending, as distinguished from a transfer of an action between district courts. *See LMRT Assocs.*, 447 B.R. at 472. Indeed, section 1452(a) does not mention "transfer" of an action between district courts, or, for that matter, a "transfer" of a civil action pending in a district court to a bankruptcy court in a different district.[3]

[3]    If Defendants intended to seek a transfer of this action to the Eastern District of California, the proper procedure would have been to file a motion to transfer to another district court and, if granted, a motion for referral to the bankruptcy court in that district. *LMRT Assocs.*, 447 B.R. at 472–74.

Defendants argue that the propriety of removal should be determined by the court to which the action was removed. *See LMRT Assocs.*, 447 B.R. at 474; Fed. R. Bankr. P. 9027(c) ("The parties shall proceed no further in that court unless and until the claim or cause of action is remanded."). However, as discussed, the statute relied on by Defendants does not authorize removal from a district court to a bankruptcy court in another district. Accordingly, Defendants' purported notice of removal is a nullity, and the United States Bankruptcy Court for the Eastern District of California would have no jurisdiction to consider the matter. *In re National Developers, Inc.*, 803 F.2d at 620 (Bankruptcy Court for Middle District of Alabama had no jurisdiction over removed New York state court action); *Doyle v. Mellon Bank, N.A.*, 307 B.R. at 465 (since no statutory authority for removal from district court to bankruptcy court, notice of removal from district court to bankruptcy court without effect and therefore stricken).

Accordingly, Plaintiffs' Motion to Strike (Dkt. 20) is GRANTED. Whether this action is subject to the automatic stay as to Defendants Sanjiv and Sheena Chopra will be addressed by separate order. The clerk is directed to send a courtesy copy of this order to the Modesto Division of the United States Bankruptcy Court for the Eastern District of California.

DONE AND ORDERED this 17th day of October, 2012.

**All Citations**

Not Reported in Fed. Supp., 2012 WL 12905650

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

In re Halvorson, Not Reported in Fed. Supp. (2018)

2018 WL 6728484

2018 WL 6728484
Only the Westlaw citation is currently available.
United States District Court, C.D. California.

IN RE John Olaf HALVORSON

And Related Related Case: Richard Baek, et al.

v.

John Olaf Halvorson, et al.

Case No. 8:18-cv-00525 JVS
|
(8:15-ap-01454 MW)
|
(related to Bankruptcy Case: 8:15-bk-13556 MW)
|
Filed 12/21/2018

**Attorneys and Law Firms**

Charity Joy Miller, Marc C Forsythe, Goe and Forsythe LLP, Irvine, CA, for In re John Olaf Halvorson.

**Proceedings: Order Regarding Subject Matter Jurisdiction and VACATING Trustee's Motion to Refer Action to Bankruptcy Court and to Confirm And/Or Substitute Trustee as Real Party in Interest** (Case Number CV 18-07046-JVS at Docket No. 64)

James V. Selna, District Judge

 **\*1** Chapter 7 Trustee Weneta Kosmala ("Trustee") filed a motion for an order (1) referring the instant action to the Bankruptcy Court, and (2) confirming and/or substituting the Trustee as the real party in interest. Case No. 2:18-cv-07046 JVS (RAOx) ("ED Action"), Docket No. 64. Defendant-Appellees Dan Halvorson and Jerry Ann Randall filed a joinder in the Trustee's motion. Id., Docket No. 65. Plaintiff-Appellants Richard Baek, Baek 153, LLC, and Pacific Commercial Group, LLC filed a consolidated opposition. Id., Docket No. 67. The Trustee filed a reply. Id., Docket No. 68. Dan Halvorson and Jerry Ann Randall replied separately. Id., Docket No. 69.

Subsequently, the Appellants filed status reports in related appeals before this Court requesting a briefing schedule on the issue of subject matter jurisdiction. Case No. 8:18-cv-00519-JVS ("519 Appeal"), Docket No. 13; Case No.

8:18-cv-00528-JVS ("528 Appeal"), Docket No. 14. On October 11, 2018, the Court entered orders in the 519 and 528 appeals, as well as two other related appeals[1] (collectively, the "Related Appeals"), ordering the parties in the Related Appeals to meet and confer regarding a briefing schedule to address whether the Bankruptcy Court had subject matter jurisdiction over adversary proceedings underlying the Related Appeals. E.g., 519 Appeal, Docket No. 14. Pursuant to that order, the various parties briefed the issue of subject matter jurisdiction.[2]

[1] The case numbers for the remaining two Related Appeals are: (1) 8:18-cv-00520-JVS ("520 Appeal"), and (2) 8:18-cv-00525-JVS ("525 Appeal").

[2] Not including identical briefs filed in separate Related Appeals, the parties filed nine total briefs on subject matter jurisdiction. Plaintiff-Appellants Richard Baek, Baek 153, LLC, and Pacific Commercial Group, LLC filed an opening brief and a reply. 519 Appeal, Docket Nos. 20, 24. Plaintiff-Appellant Grace Baek filed an opening brief and a reply. 528 Appeal, Docket Nos. 21, 25. Trustee filed an opening brief and a reply. 519 Appeal, Docket Nos. 19, 23. Defendants-Appellees Dan Halvorson and Jerry Ann Randall also filed an opening brief and a reply. 519 Appeal, Docket Nos. 17, 22. Debtor John Olaf Halvorson filed an omnibus brief. 519 Appeal, Docket No. 18. Finally, Third-Party Appellants Corey Tolliver and Christopher Coyle ("Attorney Appellants") joined in the Baek Appellants opening and responsive briefs regarding subject matter jurisdiction. 520 Appeal, Docket No. 20, 23; 525 Appeal, Docket Nos. 21, 24.

The Court now addresses the Trustee's motion and the issue of subject matter jurisdiction as follows.

**I. Background**

**A. The Events Leading to This Dispute**
Debtor John Halvorson ("Halvorson") and Plaintiff-Appellant Grace Baek were married in 2005. 519 Appeal, Docket No. 19, Declaration of Jeffrey Golden ("Golden Decl."), Ex. 9 (Memorandum Decision and Order After Bifurcated Trial on Unclean Hands) ("Memorandum Decision") at 3. Halvorson and Grace Baek's brother, Plaintiff-Appellant Richard Baek, started a company together called Pacific Commercial Group, LLC in 2007. Id. Grace Baek and Richard Baek were also members of Baek 153, LLC. Id. In December 2012, Halvorson filed for divorce against Grace Baek in California state court. Id. Halvorson

then initiated a case in Oregon state court against Grace Baek, Richard Baek, and their companies claiming that he was owed a commission on a property sale and seeking a declaratory judgment establishing his ownership interest in Baek family investment companies. Id. at 4. In response, the Baeks initiated three actions against Halvorson alleging that Halvorson interfered with the sale of the Beaverton property, and that he diverted company funds to his own use. Id.

**\*2** During the course of this litigation, Halvorson forged his wife's signature on a purported amended prenuptial agreement and testified to its authenticity under oath. Id. The Baeks' attorney, Third-Party Appellant Corey Tolliver ("Tolliver"), discovered the forgery. Id. In February 2015, the Oregon Circuit Court found Halvorson in contempt of court for this forgery and dismissed his claims against the Baeks. Id. at 4–5. The Oregon state court judgment in favor of the Baeks against Halvorson totaled $785,972.75 ("Oregon Judgment"). Id. at 5. Richard Baek also filed a separate police report against Halvorson in 2013 alleging embezzlement, and a second police report after discovering the forgery in 2014. Id.

The Baeks made a settlement offer to Halvorson on June 25, 2014, which in part required Halvorson to sell his house in Stockton, California ("Stockton Property") where his mother, Defendant Jerry Ann Randall ("Randall") had been living for forty years, and pay all net proceeds to the Baeks. Id. Halvorson rejected the offer. Id. at 6.

After entry of the Oregon Judgment, on February 25, 2015, an Application for Entry of Judgment on Sister-State Judgment was filed in Superior Court of California, County of Orange, seeking domestication of the Oregon Judgment in California. Id. The enforcement of the domesticated judgment was stayed, and on April 2, 2015, Halvorson filed an ex parte application in Orange County Superior Court to further extend the stay on the ground that the Oregon Judgment was on appeal. Id.

**B. The Eastern District Action and the Bankruptcy Case**
In order to protect Randall's interest in the Stockton Property, Halvorson and Randall signed a promissory note with Defendant Dan Halvorson, Halvorson's brother, as payee. Id. at 7. The promissory note was secured by a deed of trust and recorded on April 3, 2015. Id. The Baeks then discovered this deed of trust against the Stockton Property. Id.

In response, on July 2, 2015, Richard Baek, Baek 153, LLC, and Pacific Commercial Group, LLC filed suit against Halvorson, Randall, and Dan Halvorson in the U.S. District Court for the Eastern District of California, Judge William Shubb presiding ("ED Action").[3] Compl., ED Action, Docket No. 1. The ED Action invoked diversity jurisdiction under 28 U.S.C. § 1332. Id. ¶ 8.

3    Case No. 2:15-cv-01425-WBS-DB.

On July 13, 2015, the First Amended Complaint ("FAC") added entities related to Halvorson[4] as additional defendants ("Entity Defendants"). FAC, ED Action, Docket No. 4. The FAC alleges intentional fraudulent transfer, constructive fraudulent transfer, fraudulent conveyance, conspiracy to commit fraudulent conveyance, and aiding and abetting fraudulent conveyance. Id.

4    The Entity Defendants are PCC Fund 1, LLC; Granite Bay Partners II, LLC; JH RE Holdings, LLC; and Commercial Income Advisors, Inc. FAC, ED Action, Docket No. 4.

On July 16, 2015, Halvorson filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code in the Central District of California, Santa Ana Division, Case No. 8:15-bk-13556-MW ("Bankruptcy Case"). Weneta Kosmala ("Trustee") was appointed chapter 7 trustee. On July 20, 2015, Halvorson filed a Notice of Bankruptcy Filing, notifying the Eastern District that he had filed a voluntary chapter 7 petition in the Bankruptcy Court for the Central District of California. ED Action, Docket No. 6. On August 10, 2015, Dan Halvorson and Randall ("Answering Defendants") filed an answer. Id., Docket No. 8. Neither Halvorson nor the Entity Defendants ever filed an answer.

On October 2, 2015, the Baeks filed another complaint in the Bankruptcy Court against Halvorson seeking a determination that his liability to them under the Oregon Judgment was excepted from discharge, thereby commencing another adversary proceeding ("1382 Action"). Golden Decl., Ex. 9 (Memorandum Decision) at 8, 12.

**C. The Trustee "Removes" the ED Action to Bankruptcy Court, Creating the 1391 Action**
**\*3** On October 9, 2015, the Baeks and the Answering Defendants entered into a Joint Stipulation to stay the ED Action pending the resolution of Halvorson's Bankruptcy

In re Halvorson, Not Reported in Fed. Supp. (2018)

2018 WL 6728484

Case. ED Action, Docket No. 11. The stipulation was approved on October 13, 2015. Id., Docket No. 12.

On October 14, 2015, the Trustee filed with the Bankruptcy Court in the Central District of California a Notice of Removal[5] of the ED Action from the Eastern District of California District Court to the Bankruptcy Court. Golden Decl., Ex. 9 (Memorandum Decision) at 8. This purportedly removed case was re-designated as Adversary Proceeding No. 8:15-ap-1391 MW and assigned to Bankruptcy Judge Wallace ("1391 Action"). Id. The causes of action were deemed to involve administration of bankruptcy estate property and proceedings to determine, avoid, or recover fraudulent conveyances. Id. Thus, the Trustee substituted in as real party in interest plaintiff as to all causes of action other than the causes of action for conspiracy, and aiding and abetting. Id.

[5] The Notice of Removal was titled "Notice of Removal of United States District Court Action to Bankruptcy Court Pursuant to Rule 9027 of the Federal Rules of Bankruptcy Procedure and 28 U.S.C. §§ 157 and 1334." 1391 Action, Docket No. 1.

On October 21, 2015, the Trustee submitted a separate Notice of Removal to the Clerk's office in the Eastern District of California. ED Action, Docket No. 13. However, the Clerk modified the docket entry for the removal filing, stating that the court would disregard the notice and instructing the Trustee to initiate a new action. Id. Specifically, the day after the Trustee filed the Notice of Removal, Docket No. 13 was modified to state: "DISREGARD-ATTORNEY INSTRUCTED TO INITIATE NEW ACTION." Id. On October 30, 2015, Docket No. 13 was again modified to state "FILING FEE REFUNDED." Id. The docket entry also provides the refund amount, $400, and the receipt number. Id. Despite the Eastern District's court's notice that it would "disregard" the Notice of Removal, the purportedly "removed" case continued to be litigated in the Bankruptcy Court for over two years. The Baeks' counsel of record in the ED Action was not informed of the October 22, 2015 or October 30, 2015 modification to Docket No. 13 in the Court's ECF system, either by the Trustee or any other source. ED Action, Docket No. 67-1, Declaration of Phillip Allan Trajan Perez ("Perez Decl.") ¶¶ 3–6. The Trustee also contends that neither her nor her counsel received any notice of the changes made to the docket in the ED Action. Trustee Reply Brief, 528 Appeal, Docket No. 24 at 1, 4.

On November 2, 2015, Halvorson received a chapter 7 discharge. See No. 8:15-bk-13556 MW, Docket No. 58. As a result, all the claims asserted against him in the ED Action were discharged. ED Action, Docket No. 18-1 (RJN Ex. 9) ("John Halvorson is not ... a party to the Fraudulent Transfer action ... as a result of his chapter 7 discharge."). Therefore, Halvorson is no longer a party to the 1391 Action.

In addition, on December 17, 2015 Richard Baek, Baek 153, LLC, and Pacific Commercial Group, LLC moved to amend the complaint to substitute Trustee as real party in interest to several claims asserted against the Answering Defendants. 1391 Action, Docket No. 19. On May 2, 2016, the Bankruptcy Court entered an order finding that the Trustee is substituted as the real party in interest with respect to the first through sixth, ninth, and tenth causes of action in the FAC. 1391 Action, Docket No. 58. Richard Baek, Baek 153, LLC, and Pacific Commercial Group continued to remain as real parties in interest as to the two remaining claims for relief. Id.

### D. The 1454 Action

**\*4** On November 25, 2015, Grace Baek filed another complaint in the Bankruptcy Court against Halvorson and the Trustee seeking a declaratory judgment as to what is and what is not property of the bankruptcy estate, commencing Adversary Proceeding No. 8:15-ap-1454 MW ("1454 Action"). Golden Decl., Ex. 9 (Memorandum Decision) at 8. The action was assigned to Bankruptcy Judge Wallace, who was already overseeing the 1391 Action, i.e., the purportedly removed Eastern District case. Since Halvorson was discharged from the 1391 Action, there is no overlap as to the parties of the 1391 and 1454 Actions, except the Trustee.

### E. The Mediation Arrest and Unclean Hands Trial

On March 4, 2016, after a status conference two days prior, the Bankruptcy Court ordered that the 1391 Action and the 1454 Action go to mediation. Id. at 9. The mediation between the Baeks and Halvorson was scheduled for May 27, 2016 in front of Bankruptcy Judge Meredith Jury. Id.

Throughout this time, the criminal investigation against Halvorson (initiated by the Baeks) continued to proceed. Id. at 10. On May 9, 2016, Halvorson was indicted for perjury, forgery, identity theft, attempted aggravated identity theft, and attempted aggravated theft in the first degree. Id. The grand jury proceedings were covered by Deputy District Attorney Kevin Demer ("Demer"). Id. Throughout May 2016, Tolliver (the Baeks' attorney) had numerous discussions with Demer regarding Halvorson's arrest. Id. at 11. Tolliver told

**In re Halvorson, Not Reported in Fed. Supp. (2018)**

2018 WL 6728484

Demer that the Baeks had offered to pay for the cost of extradition in order to have Halvorson arrested. Id. On May 23, 2016, Tolliver informed Demer that Halvorson had been ordered to appear at a mediation at the Bankruptcy Court in Riverside, California on May 26, 2016. Id. On May 27, during the mediation in Judge Jury's courtroom, Demer had Halvorson arrested. Id. at 14. The mediation then ended without a settlement among any of the parties. Id.

Bankruptcy Judge Wallace held a status conference after the arrest with the background knowledge that the Baeks had commenced three lawsuits against Halvorson in Oregon state court, had sued Halvorson, his mother, and brother in the U.S. District Court for the Eastern District of California, and had initiated two additional adversary proceedings against Halvorson in the Bankruptcy Court. Id. at 18; Matin Decl., 519 Appeal, Ex. 6 (Transfer Order) at 7. At the June 22, 2016 status conference with respect to the 1391 and 1454 Actions, Judge Wallace learned that Halvorson had been arrested during the mediation. Golden Decl., Ex. 9 (Memorandum Decision) at 18.

The Bankruptcy Court then issued an Order After Status Conference raising the unclean hands doctrine sua sponte and staying the adversary proceedings except as to the issue of whether any party to the mediation was guilty of unclean hands based on actions that had the effect of sabotaging the mediation through Halvorson's arrest. Id. The Bankruptcy Court planned to hold a bifurcated trial, with the first phase addressing the issue of unclean hands. Id.

The Baeks moved for partial summary judgment and to dismiss the unclean hands affirmative defense; the Bankruptcy Court rejected both motions. Id. at 19. On July 11, 2017, the Baeks filed motions seeking permission to the U.S. District Court for the Central District of California to take an interlocutory appeal of the Bankruptcy Court's orders denying the motions. Id. The District Court denied those motions. Id.

A bench trial was held in the Circuit Court for the State of Oregon between July 31, 2017 and August 4, 2017 on the criminal charges against Halvorson. Id. He was convicted on forgery and two counts of identity theft, and acquitted of perjury. Id.

 **\*5** On October 6, 2017, with the unclean hands trial scheduled for later that month, the Baeks executed a settlement agreement with the Trustee providing for the Baeks' purchase and acquisition of the Trustee's rights, claims,

and interests in the 1454 Action and the execution and filing of a stipulated judgment in the 1391 Action. Id. The Trustee filed a motion to continue the bifurcated trial on unclean hands until after the motion to approve the settlement was determined; the Bankruptcy Court denied the motion. Id. at 20.

On August 21, 2017, the Bankruptcy Court consolidated the 1391 Action (regarding the fraudulent transfer claims) and the 1454 Action (regarding declaratory relief) for a trial regarding the issue of unclean hands. Matin Decl., 528 Appeal, Ex. 1 at 3. The trial on unclean hands, overseen by Bankruptcy Judge Wallace, ran from October 30, 2017 to November 3, 2017. Golden Decl., Ex. 9 (Memorandum Decision) at 20. Minutes after trial began, the Baeks filed an emergency motion to recuse Bankruptcy Judge Wallace; Bankruptcy Judge Theodor Albert denied the motion for recusal on January 23, 2018. Id. On November 17, 2017, the Baeks filed a motion to withdraw the reference in the 1391 and 1454 Actions in the District Court. Id. The reference withdrawal motion was denied by this Court on January 29, 2018. Id.

The Baeks then filed a notice of appeal to the District Court on the denial of the recusal motion. Id. at 21. They also filed in the Bankruptcy Court an emergency motion for stay of the effectiveness of the order denying the recusal motion and a motion for certification of a direct appeal to the Ninth Circuit. Id. Bankruptcy Judge Albert denied both motions. Id. The Baeks then filed a Petition for Writ of Mandamus with the Ninth Circuit on February 2, 2018. Id.

Bankruptcy Judge Wallace entered identical Memorandum Decisions in the 1391 and 1454 Actions after the unclean hands trial on February 14, 2018, in which he found the Baeks guilty of unclean hands against the Trustee, Halvorson, and the Answering Defendants. Id. at 46. Judge Wallace concluded that the unclean hands doctrine required his court "to shut its doors against the guilty parties, and to refuse to interfere on their behalf, to acknowledge their right or to award them any remedy in these adversary proceedings." Id. at 3. The Bankruptcy Court de-consolidated the 1391 and 1454 Actions a few days after issuing the Memorandum Decision. Matin Decl., 528 Appeal, Ex. 2 at 1–2.

**F. The Related Appeals**
In March 2018, the 519, 520, 525, and 528 Appeals ("Related Appeals") were filed. Related Appeals, Docket No. 1. The Related Appeals all seek review of the Bankruptcy Court's

Memorandum Decision and Order After Bifurcated Trial on Unclean Hands. Id.

The 519 and 520 Appeals arise from the 1391 Action regarding the fraudulent transfer claims. 519 Appeal, Docket No. 1; 520 Appeal, Docket No. 1. The 519 Appeal was brought by Richard Baek, Baek 153, LLC, and Pacific Commercial Group, LLC, against Halvorson, the Answering Defendants, and the Entity Defendants. 519 Appeal, Docket No. 1. The 520 Appeal was brought by Third-Party Appellants Tolliver and Christopher Coyle (another of the Baeks' attorneys), who joined in the Appellants' brief regarding subject matter jurisdiction. 520 Appeal, Docket No. 1; Joinder, 520 Appeal, Docket No. 20.

The 525 and 528 Appeals arise from the 1454 Action regarding declaratory relief. 525 Appeal, Docket No. 1; 528 Appeal, Docket No. 1. The 528 Appeal was brought by Grace Baek against Halvorson and the Trustee solely in her capacity as Chapter 7 Trustee of the Bankruptcy Estate. 528 Appeal, Docket No. 1. The 525 Appeal was brought by Third-Party Appellants Tolliver and Coyle, who again joined in Appellant Grace Baek's brief regarding subject matter jurisdiction. 525 Appeal, Docket No. 1; Joinder, 525 Appeal, Docket No. 21.

### G. The Propriety of Removal Is Considered by the Bankruptcy Court and the District Court

**\*6** Two weeks after issuing the Memorandum Decision, on February 28, 2018, the Bankruptcy Court held a status conference during which it discussed the procedural defect in the initial removal of the 1391 Action and what impact, if any, it had on the Bankruptcy Court's jurisdiction over the proceeding. Matin Decl., 519 Appeal, Ex. 6 (Transfer Order) at 10. At the status conference, the Trustee's counsel acknowledged being aware of the removal issue, stating that they had "identified" and "researched" the issue. Matin Decl., 519 Appeal, Ex. 1 (2/28/18 Tr.) at 5:7–6:1. The Trustee's counsel further acknowledged conferring with the Answering Defendants' counsel regarding the removal issue prior to the conference, stating that Answering Defendants' counsel "believes that jurisdiction is proper ... because of consent and the like." Id. The Baeks' attorneys were not aware of the issue prior to the status conference. Id. at 6:17–7:1. The Court then requested briefing on the removal issue. Id. at 9:6–15.

In March 2018, the Trustee filed a brief, which Answering Defendants joined, asserting in part that the ED Action was properly removed and pending in the Bankruptcy Court as the 1391 Action. 1391 Action, Docket Nos. 272, 280. The Baeks also filed a brief arguing that the ED Action was never removed to the Bankruptcy Court because no statute permits removal of a federal case from an Article III district court to an Article I bankruptcy court, any construction to the contrary unconstitutionally derogates the authority of Article III courts, and the Notice of Removal was a nullity. Id., Docket No. 281 at 4–7; ED Action, Docket No. 67-1.

On April 25, 2018, at a continued status conference, the Bankruptcy Court expressed concerns regarding the Bankruptcy Court's jurisdiction over the 1391 Action, stating "you can't remove an action from the federal district court for the Eastern District to bankruptcy court in the [C]entral [D]istrict," and "it's not just that the clerk rejected it, it's that the clerk rightfully rejected. The clerk did the right thing in the Eastern District by rejecting the removal." Matin Decl., 519 Appeal, Ex. 2 (4/25/18 Tr.) at 13:2–15. On April 26, 2018, the Bankruptcy Court declared it would lift the automatic stay and stay the Memorandum Decision "so that the Eastern District may hear and determine the [removal issue]." Id., Ex. 3 (Order Continuing Stay of Memorandum Decision) at 3.

On June 11, 2018, the Eastern District held a hearing regarding Plaintiffs' (1) Motion for Stay Relief to Voluntarily Dismiss Non-Answering Defendants and (2) Motion for Order to Confirm the Validity of this Court's Prior Orders and to Enforce Such Orders. ED Action, Docket Nos. 17, 18. At the hearing, Judge Shubb indicated his position that the Trustee's Notice of Removal from the Eastern District to the Bankruptcy Court was a "nullity," and that Judge Shubb "didn't authorize the removal of this action to any court ... and as far as [he was] concerned, this case [was] still in [the Eastern District]." Matin Decl., 519 Appeal, Ex. 4 (6/11/18 Tr.) at 22–24. Judge Shubb also stated that the District Court "isn't a transferor court. You can't come in ... and file a notice of removal and say that [the Judge] transferred this case to some other court." Id. Judge Shubb then continued the hearing on the two motions to August 6, 2018 to be heard along with the Trustee's Motion for Order Substituting Trustee as Real Party in Interest and to Change Venue. ED Action, Docket No. 39. At the August 6, 2018 hearing, Judge Shubb confirmed his position that the ED Action was never removed. See Matin Decl., 519 Appeal, Ex. 5 (8/6/18 Tr.) at 24:4–5. Judge Shubb also stated at the hearing that the order to "DISREGARD" the Trustee's Notice of Removal at Docket No. 13 was "clear and unequivocal" in its determination that the ED Action was never removed from the Eastern District to the Bankruptcy Court. Id. at 34:20–35:25. Finally, Judge Shubb confirmed

In re Halvorson, Not Reported in Fed. Supp. (2018)

2018 WL 6728484

that if he were to grant venue transfer, such transfer would not be retroactive. Id. at 36:21–37:3.

**\*7** On August 13, 2018, the Eastern District entered an order transferring venue of the ED Action to this Court. Matin Decl., 519 Appeal, Ex. 6 (Transfer Order). In the Transfer Order, Judge Shubb confirmed that "the Clerk correctly modified the docket entry for the removal filing" by "stating that the court would disregard the notice and instructing the Trustee to initiate a new action." Id. at 5. In determining that the Bankruptcy Court and judges in the Central District are more familiar with the facts of this case than the Eastern District, Judge Shubb stated:

> Although this court continues to reiterate that the 1391 Action was never properly removed to the Bankruptcy Court in the Central District, it cannot deny the fact that the case and related issues have been extensively litigated there, and a trial has already purportedly been held. There is no doubt that the purported trial, although the Bankruptcy Court never had proper jurisdiction to hold that trial, dealt with the very issues currently pending before this court.

Id. at 12. Judge Shubb granted the motion to change venue despite finding that "the Trustee is not a party to this action" because the motion was joined in by the Answering Defendants, who did have standing to make the motion. Id. at 10–11.

**H. The Issue Now Before the Court: Subject Matter Jurisdiction**

On August 31, 2018, Richard Baek, Baek 153, LLC, and Pacific Commercial Group, LLC filed in the Bankruptcy Court a motion to dismiss the 1391 Action for lack of subject matter jurisdiction. 1391 Action, Docket No. 298. At a September 5, 2018 status conference, the Bankruptcy Court continued the hearing on the motion to dismiss and suggested that this Court address the jurisdictional issues. Matin Decl., 519 Appeal, Ex. 7 (9/5/18 Tr.) at 18:12–18.

On September 14, 2018, the Trustee filed an a motion in this Court to (1) refer the ED Action to bankruptcy court; and (2) confirm and/or substitute the Trustee as the real party in interest. ED Action, Docket No. 64. On October 11, 2018, this Court entered orders on the dockets for each of the Related Appeals requiring the parties to meet and confer regarding a briefing schedule to address the issue of whether the Bankruptcy Court had proper jurisdiction. E.g., 519 Appeal, Docket No. 14. The parties then briefed the

jurisdictional issue now before the Court with various filings on the dockets for the Related Appeals. See supra, note 2.

**II. Discussion**

**A. The Bankruptcy Court Lacked Subject Matter Jurisdiction Over the 1391 Action.**

"The objection that a federal court lacks subject-matter jurisdiction ... may be raised by a party, or the court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." Arbaugh v. Y&H Corp., 546 U.S. 500, 506 (2006). Lack of subject matter jurisdiction may be raised "even for the first time on appeal." Grupo Dataflux v. Atlas Global Grp., 541 U.S. 567, 571 (2004).

The Court finds that the Bankruptcy Court at all times lacked subject matter jurisdiction over the 1391 Action.

1. There is no statutory or constitutional basis to "remove" a district court case to a bankruptcy court.

28 U.S.C. § 1452 governs removal of claims related to bankruptcy cases. Section 1452 states in relevant part:

> A party may remove any claim or cause of action in a civil action ... to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

28 U.S.C. § 1452(a). Section 1452 "intentionally applies only to removal to bankruptcy court from state court and certain federal courts but not district courts." In re Curtis, 571 B.R. 441, 449 (B.A.P. 9th Cir. 2017). "The proper procedure for transferring a case from federal district court to bankruptcy court is to request a referral by the district court." Id.

**\*8** The plain language of § 1452 does not support the Trustee and Answering Defendants' contention that an action may be removed from a district court to a bankruptcy court. "It violates the plain language of 28 U.S.C. § 1452(a) to say that an action can be removed 'to district court' when it is already pending in district court, because the words 'to district court' by necessity involve the concept of bringing the action **to** district court **from** some other forum." Id. at 445 (quoting In re Mitchell, 206 B.R. 204, 209 (Bankr. C.D. Cal. 1997) ) (emphasis in original).

Furthermore, interpreting the bankruptcy removal statute to permit removal from the district court to the bankruptcy

In re Halvorson, Not Reported in Fed. Supp. (2018)

2018 WL 6728484

court is constitutionally impermissible. Following [Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50 (1982)](), Congress amended [28 U.S.C. § 1334]() "to make clear that the district courts (not bankruptcy courts) had (i) original and exclusive jurisdiction over bankruptcy cases, and (ii) original but not exclusive jurisdiction over proceedings in a bankruptcy case," while permitting courts to refer cases to bankruptcy courts pursuant to [28 U.S.C. § 157](). Id. at 446. Thus, permitting removal from a district court to a bankruptcy court "would impermissibly undermine the district court's power to refer matters to the bankruptcy court" and "permit the bankruptcy court unreviewable discretion under [§ 1452(b)]() to remand a claim or cause of action to the district court." Id. at 447; see also [Sharp Elecs. Corp. v. Deutsche Fin. Servs. Corp., 222 B.R. 259, 264 (Bankr. D. Md. 1998)]() ("The specific right of direct removal to the bankruptcy court died with Marathon and the Bankruptcy Amendments and Federal Judgeship Act of 1984, when Congress resolved that bankruptcy courts would be Article I adjunct units of the district courts."); [Centrust Sav. Bank v. Love, 131 B.R. 64, 66 (S.D. Tex. 1991)]() ("Because bankruptcy courts are subordinate operations of the district courts, removal is never proper directly to the bankruptcy court."). The B.A.P. further explained the constitutional concerns inherent to an interpretation permitting removal from the district court to the bankruptcy court:

> The predicate for the referral power is the bedrock principle that the district courts have jurisdiction over bankruptcy cases and proceedings; the bankruptcy court's jurisdiction over such matters is purely and solely derivative of the district court's jurisdiction. And the bankruptcy court's power to hear, or to hear and determine, as the case may be, bankruptcy cases and proceedings is entirely dependent upon the referral by the district court. Any interpretation of a statute that would imply that the bankruptcy courts had jurisdiction of bankruptcy cases and proceedings separate and independent from, or even co-equal to, the jurisdiction granted the Article III courts, or that would interfere with the Article III courts' exercise of that jurisdiction and judicial power through the system of referral to the bankruptcy courts, or that ... would permit bankruptcy courts to dispose of matters originating in the district courts in apparent derogation of the power of those courts to control their own proceedings, would be ... a constitutional non-starter.

[In re Curtis, 571 B.R. at 447–48](). Courts are bound to interpret statutes to avoid such constitutional violations. See [Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Const. Trades Council, 485 U.S. 568, 575 (1988)]() ("where an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress"). Therefore, the Court follows the reasoning of the B.A.P. and rejects any interpretation of [§ 1452]() that would permit removal of a case from the district court to the bankruptcy court.

**\*9** Because there is no statutory or constitutional authority to remove a district court case to bankruptcy court, a notice of removal seeking to do so is a nullity and has no legal effect. See [You Fit, Inc. v. Pleasanton Fitness, LLC, No. 8:12-cv-1917-JDW-EAJ, 2012 WL 12905650, at \*2 (M.D. Fla. Oct. 19, 2012)]() (removal notice "a nullity"); [Doyle v. Mellon Bank, N.A., 307 B.R. 462, 465 (E.D. Pa. 2004)]() (removal notice "deemed to be without effect"); [LaSalle Capital Grp., Inc. v. Alexander Doll Co., No. 95 C 1640, 1995 WL 584429, at \*6 (N.D. Ill. Oct. 2, 1995)]() (removal notice "procedurally improper and ineffective"); [In re Hakim, 212 B.R. 632, 639 (Bankr. N.D. Cal. 1997)]() (removal notice "ineffective"); [In re Cornell & Co., Inc., 203 B.R. 585, 586 (Bankr. E.D. Pa. 1997)]() ("attempted removal under [28 U.S.C. § 1452(a)]() is simply void; it must be undone").

Here, the ED Action was originally pending in the U.S. District Court for the Eastern District of California. ED Action, Docket No. 1. In October 2015, Trustee improperly attempted to remove the ED Action to the Bankruptcy Court for the Central District of California, creating the 1391 Action. Id., Docket No. 13. That the Trustee's removal was without authority is further demonstrated by the modifications made to the docket entry in the ED Action which disregarded the removal notice, instructed the Trustee's attorney to initiate a new action, and refunded the $400 filing fee. Id. Because the Trustee's attempt to remove the ED Action to the Bankruptcy Court was improper and without effect, the ED Action never left the Eastern District prior to transfer to this Court; therefore, the Bankruptcy Court at all times lacked subject matter jurisdiction over the 1391 Action because it never presented a live case or controversy. See [McCullough v. Graber, 726 F.3d 1057, 1059 (9th Cir. 2013)]() ("A federal court lacks jurisdiction unless there is a 'case or controversy' under Article III of the Constitution." ).

   2. The Answering Defendants' arguments regarding subject matter jurisdiction are without merit.

First, the Answering Defendants cite [Quality Tooling, Inc. v. United States, 47 F.3d 1569 (Fed. Cir. 1995)](), to support their contention that removal was proper. Answering Def. Br., 519

In re Halvorson, Not Reported in Fed. Supp. (2018)

2018 WL 6728484

Action, Docket No. 17 at 11–15. However, Quality Tooling is distinguishable because it did not involve a removal from the district court, but from an Article I court (the Court of Federal Claims) to another Article I court (the bankruptcy court). 47 F.3d at 1571–72. Courts have distinguished Quality Tooling from removal from Article III district courts on this basis. See, e.g., In re Curtis, 571 B.R. at 445 n.2 (citing Quality Tooling for the proposition that "courts have interpreted 28 U.S.C. § 1452 as authorizing removal to district courts from other federal courts, such as the Court of Federal Claims, the local courts of the District of Columbia, or the territorial courts of Guam," all Article I courts); You Fit, 2012 WL 12905650, at *1 (same).

Second, the Answering Defendants cite two additional cases to support its argument that removal from the district court is proper: In re Philadelphia Gold Corp., 56 B.R. 87 (Bankr. E.D. Pa. 1985), and MATV-Cable Satellite, Inc. v. Phoenix Leasing, Inc., 159 B.R. 56 (Bankr. S.D. Fla. 1993). Answering Def. Br. at 12–14. However, In re Curtis considered both cases and rejected their reasoning. 571 B.R. at 448–49. As to MATV, the B.A.P. stated that the case "does not provide a solid basis for interpreting 28 U.S.C. § 1452 to authorize removal from a federal district court to bankruptcy court." Id. at 448. As to Philadelphia Gold, the B.A.P. stated that the court's "analysis was perfunctory and did not take into account the plain language of the statute or the constitutional concerns raised by its interpretation." Id. The Court agrees with the B.A.P., and declines to find removal from the district court to the bankruptcy court permissible based on the authority cited by the Answering Defendants.

**\*10** Third, the Answering Defendants argue that even if the Trustee's removal notice was improper, "the removal was nevertheless effective" because no party sought to remand within thirty days under 28 U.S.C. § 1447. Answer Def. Br. at 14–15. However, § 1447 is inapposite because it governs removals from state court. See 28 U.S.C. § 1447(a) ("In any case removed from a State court, the district court may issue all necessary orders and process to bring before it all proper parties ...."). Further, § 1447 explicitly provides that a "motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days." Id. § 1447(c) (emphasis added). As discussed above, the 1391 Action was never properly before the Bankruptcy Court, and thus the Bankruptcy Court had no live case or controversy pending before it, nor any subject matter jurisdiction over the 1391 Action. Therefore, no remand motion is necessary because the "ultimate responsibility to ensure jurisdiction lies

with the district court." Polo v. Innoventions Int'l, LLC, 833 F.3d 1193, 1196 (9th Cir. 2016).

Furthermore, "no action of the parties can confer subject-matter jurisdiction upon a federal court." Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982). Therefore, "the consent of the parties is irrelevant..., principles of estoppel do not apply ..., and a party does not waive the requirement by failing to challenge jurisdiction early in the proceedings." Id. Therefore the Court rejects any argument that subject matter jurisdiction was waived, or that the parties cannot assert it based on principles of estoppel or consent.

Finally, the Answering Defendants argue that the subject matter of the 1391 Action was properly before the Bankruptcy Court because it falls within the purview of 28 U.S.C. § 1334, and is a "core" matter pursuant to 28 U.S.C. § 157. Ansering Def. Br. at 23–25. However, the Answering Defendants' claims about the jurisdictional bases for the 1391 Action are irrelevant because they presume the existence of an underlying adversary proceeding. As noted above, the 1391 Action never actually served as a continuation of the ED Action, i.e., it never actually "existed," because the Bankruptcy Court never had subject matter jurisdiction to hear and decide the matter. In other words, the 1391 Action never got to the Bankruptcy Court in the first place.

3. All actions taken by the Bankruptcy Court in the 1391 Action are void and the 1391 Action is subject to dismissal. The Baek Appellants argue that the Court should direct the Bankruptcy Court to (1) vacate all orders entered in the 1391 Action as nullities; and (2) dismiss the 1391 Action for lack of subject matter jurisdiction. The Court agrees.

(2) "It is well settled that a judgment is void if the court that considered it lacked jurisdiction of the subject matter." Watts v. Pinckney, 752 F.2d 406, 409 (9th Cir. 1985) (internal quotation marks and citation omitted); see also In re Gurrola, 328 B.R. 158, 164 (B.A.P. 9th Cir. 2005) (if a court acts "without authority, its judgments and orders are nullities") (quoting Elliott v. Peirsol's Lessee, 26 U.S. 328, 329 (1828) ); Special Investments, Inc. v. Aero Air, Inc., 360 F.3d 989, 994 (9th Cir. 2004) ("the district court erred in failing to vacate its order ... once it determined that it lacked subject matter jurisdiction"); Royal Pac. Ltd. v. Faith Elec. Manufacture Co., No. 17cv357 MCA/KBM, 2018 WL 3242300, at *3 (D.N.M. Apr. 20, 2018) ("any action taken by the Court in the absence of subject matter jurisdiction is void").

Furthermore, if "a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." Arbaugh, 546 U.S. at 514; see also Rainero v. Archon Corp., 844 F.3d 832, 841 (9th Cir. 2016) ("If a court lacks subject matter jurisdiction, it is obligated to dismiss the case, regardless of how long litigation has been ongoing."). "This is true even though [dismissal] 'may also result in the waste of judicial resources and may unfairly prejudice litigants.' " Rainero, 844 F.3d at 841 (quoting Henderson ex rel. Henderson v. Shinseki, 562 U.S. 428, 434 (2011) ).

**\*11** Here, because the ED Action was never removed to the Bankruptcy Court, there was no pending case or controversy before it, and therefore no subject matter jurisdiction. See You Fit, 2012 WL 12905650, at \*2 ("Defendants' purported notice of removal [from district court to bankruptcy court] is a nullity, and the [bankruptcy court] would have *no jurisdiction* to consider the matter") (emphasis added); Thomas Steel Corp. v. Bethlehem Rebar Indus., Inc., 101 B.R. 16, 21 (Bankr. N.D. Ill. 1989) (attempted removal from district court to bankruptcy court "provides no jurisdiction for [the bankruptcy] court to take such action").

At the hearing, counsel for the Answering Defendants argued that, even if the Court finds that the Bankruptcy Court did not have subject matter jurisdiction over the 1391 Action in October 2015 when it was purportedly removed, the Bankruptcy Court has had jurisdiction at least since March 2016, when the Bankruptcy Court granted a motion to substitute Trustee as the real party in interest, thereby creating a new operative complaint with a new caption. The Court disagrees. The Bankruptcy Court lacked jurisdiction over the 1391 Action in the first instance, i.e., it had no power or authority to adjudicate any aspect of the 1391 Action from the moment it was purportedly removed from the Eastern District. No subsequent order by the Bankruptcy Court, including an order substituting the Trustee as the real party in interest, can change that fundamental threshold inquiry.

Accordingly, the Court vacates all action taken by the Bankruptcy Court in the 1391 Action, and directs the Bankruptcy Court to dismiss the 1391 Action in its entirety.

**B. The Memorandum Decision Issued After the Consolidated Unclean Hands Trial Must Be Vacated as to the 1454 Action, and a New Trial Is Necessary to the Extent the Bankruptcy Court Continues to Prosecute the Unclean Hands Doctrine Against Grace Baek.**

1. The Memorandum Decision must be vacated.
Unlike the 1391 Action, it is undisputed that the Bankruptcy Court had jurisdiction over the 1454 Action, in which Grace Baek filed a complaint against Halvorson and the Trustee seeking a declaratory judgment as to what is and is not property of the bankruptcy estate. See G. Baek Reply, 528 Appeal, Docket No. 25 at 1. Rather, Grace Baek contends that the lack of jurisdiction in the 1391 Action infected the consolidated proceedings and trial in the 1454 Action, particularly the Memorandum Decision issued after the trial on unclean hands. Id. Therefore, Grace Baek argues that to the extent that the Bankruptcy Court intends to continue prosecuting the unclean hands doctrine against her, a new trial is necessary. Id. at 2.

As noted in this Order's Background section, the Bankruptcy Court consolidated the 1391 and 1454 Actions in advance of trial on unclean hands. Matin Decl., 528 Appeal, Ex. 1 at 3. After trial, the Bankruptcy Court issued identical Memorandum Decisions in the 1391 and 1454 Actions finding the Baeks guilty of unclean hands for their role in the arrest of Halvorson at a court-ordered mediation. Golden Decl., Ex. 9 (Memorandum Decision) at 46. The two actions were then de-consolidated. Matin Decl., 528 Appeal, Ex. 2 at 1–2.

Grace Baek points to Brown v. Francis, 75 F.3d 860 (3d Cir. 1996), and Cunningham v. BHP Petroleum Great Britain PLC, 427 F.3d 1238 (10th Cir. 2005), to support the contention that the Memorandum Decision entered in the 1454 Action is void because it is tainted by the lack of jurisdiction in the 1391 Action.

**\*12** In Brown, trustees and owners of real estate filed an inverse condemnation action against the government in the District Court of the Virgin Islands. 75 F.3d at 862. The government responded by filing an eminent domain action in the Virgin Islands Territorial Court. Id. The trustees removed the territorial court action to the district court, and the district court rejected the government's challenge to removal based on lack of subject matter jurisdiction, finding that jurisdiction existed based on diversity of citizenship. Id. at 862–63. The district court and territorial court actions were then consolidated for discovery and for trial without a jury, and the parties stipulated to sending the matters to arbitration. Id. at 863. The arbitrator issued an award and the district court confirmed. Id. at 864.

*In re Halvorson*, Not Reported in Fed. Supp. (2018)

2018 WL 6728484

On appeal, the Third Circuit held that the district court did not have subject matter jurisdiction over the removed territorial action based on diversity, and the case was "improvidently removed." Id. at 866. The Third Circuit further noted that the district court engaged in actions subsequent to removal serving to "integrate" the jurisdictionally proper (district court action) and improper (removed territorial action) actions, including by consolidating the cases. Id. The court also found that the parties' post-consolidation arbitration agreement "had the practical effect of permitting the district court to exercise authority over a case for which it did not have subject matter jurisdiction." Id. The Third Circuit was "unwilling to approve" of the result because the district court's actions allowed the "jurisdictional infirmity" of the removed territorial court action "to taint the court's attempts to exercise its subject matter jurisdiction over" the district court action. Id. Thus, the Third Circuit determined that it "must vacate any orders entered by the district court entered after [removal] ... in which the district court purported to exercise jurisdiction over both [actions]." Id. Because post-removal actions were ineffectual, the court found that "restoring the parties to the positions that they occupied prior to the removal" was the proper course of action, thus vacating the district court's judgment confirming the arbitration award for lack of jurisdiction. Id. at 867.

In Cunningham, plaintiff employees sued defendant companies in state court over employment disputes. 427 F.3d at 1240. Defendants removed the case to federal court based on diversity, and the plaintiffs amended the complaint to include two additional plaintiff employees. Id. No party contested the district court's jurisdiction in the removed case. Id. Separately, the plaintiffs filed suit in federal court against a related defendant that was not a party to the removed action, alleging "essentially the same claims." Id. at 1241. The district court then granted the plaintiffs' motion to consolidate the cases. Id. Eventually, four years after removal, the district court dismissed the removed case for lack of subject matter jurisdiction. Id. at 1243. The Tenth Circuit affirmed the lack of jurisdiction over the removed action and vacated "all the district court's post-removal orders, as other circuits have done in similar circumstances," including orders entered post-consolidation of the removed case and the federal case, citing Brown. Id. at 1245. The court noted that Brown "determined it was necessary" to vacate orders entered by the district court after the case was removed "in which the district court purported to exercise jurisdiction over both [of the consolidated cases]." Id.

Here, Grace Baek argues that the Court should follow Brown and Cunningham because the Memorandum Decision "makes pervasive use of evidence and findings related to the 1391 [Action] as the ostensible bases for the findings and conclusions related to the 1454 [Action]." G. Baek Br., 528 Appeal, Docket No. 21 at 5–6, 10. For instance, the Bankruptcy Court began its discussion of the wrongful conduct giving rise to unclean hands with a section titled "Wrongdoing of the Baeks." Golden Decl., Ex. 9 (Memorandum Decision) at 37 (emphasis added). The discussion as to the wrongdoing continues to refer to "the Baeks" in the plural, rather than to any independent and separate conduct by Grace Baek. Id. at 37–41. The Memorandum Decision also assesses the conduct of the Answering Defendants, and the harm to them arising out of the "mediation sabotage" arrest of Halvorson, although the Answering Defendants are not parties to the 1454 Action. Id. at 42–44. Lastly, the Memorandum Decision discussed harm to Halvorson resulting from his arrest in a courthouse where his brother Dan Halvorson was also present. Id. at 45, 46. However, since the Bankruptcy Court had no jurisdiction over the 1391 Action, Dan Halvorson never should have been ordered to be present at the mediation in the first place because he is not a party to the 1454 Action.

**\*13** The Court finds that the Memorandum Decision must be vacated as to the 1454 Action because the entire trial was infected by Bankruptcy Court's lack of subject matter jurisdiction over the 1391 Action. The only conduct attributed independently to Grace Baek was her grand jury testimony in Oregon state court, her confirmation of an offer to pay extradition costs for Halvorson, her desire to have Halvorson arrested, and her thanks to the deputy district attorney following Halvorson's arrest. See id. at 10–11, 17. The Memorandum Decision addressed the motivation and conduct of the Baeks in many instances without differentiation, assessed their collective impact on Halvorson's family and their attorneys, and found that they collectively prejudiced the cases of the Trustee, Dan Halvorson, and Jerry Ann Randall in the 1391 Action. Therefore, the Memorandum Decision inextricably weaves facts, findings, and conclusions from a case over which it had no subject matter jurisdiction into a case which was jurisdictionally proper.

As a result, meaningful appellate review would be impractical as to the Memorandum Decision in the 1454 Action. See Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 973 (9th

Cir. 2006) ("factual findings made by a judge after a bench trial 'must be explicit enough to give the appellate court a clear understanding of the basis for the trial court's decision, and enable it to determine the ground on which the trial court reached its decision' ") (citation omitted). It is impossible to determine to what extent the Bankruptcy Court's references to evidence and findings in the void 1391 Action and the parties to that action impacted its ultimate determination against Grace Baek in the 1454 Action. Furthermore, consolidation of the 1391 and 1454 Actions limited Grace Baek's ability to object to the admission of evidence irrelevant to the merits of her claims or her personal inequitable conduct. For instance, Grace Baek argues that she would have moved for the preclusion of evidence relating to (1) the claims or disputes involving the Answering Defendants, (2) how the arrest affected Halvorson's family members, or (3) conduct by any other party (e.g. Richard Baek), as such evidence would have been irrelevant to her purported unclean hands. G. Baek Reply Br., 528 Appeal, Docket No. 25 at 4–5. Therefore, a court reviewing the decision on appeal cannot know what evidence would have been admitted into the record had the 1454 Action been tried alone.

Based on the foregoing, the Court vacates the Memorandum Decision as to the 1454 Action.

2. A new trial is necessary.

Certain errors are so fundamental that they infect the entire trial process by undermining its structural integrity. See Arizona v. Fulminante, 499 U.S. 279, 280, 309–10 (1991). Errors have "been deemed structural if the effects of the error are simply too hard to measure" or "the error always results in fundamental unfairness." Weaver v. Massachusetts, 137 S. Ct. 1899, 1908 (2017). Subject matter jurisdiction is a structural necessity foundational to any decision rendered by a federal court. See Spring Commc'ns Co., L.P. v. APCC Servs., Inc., 554 U.S. 269, 289–99 (2008) ("No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.").

Here, the Court remands the matter to the Bankruptcy Court to the extent it intends to pursue an unclean hands trial as to Grace Baek, but not on the same inherently flawed trial record. Based on the foregoing analysis, it is not clear to the Court that unclean hands can be retried and reconsidered as to Grace Baek on the same trial record in a manner which does not violate her right to due process. See Gasoline Prods. Co. v. Champlin Refining Co., 283 U.S. 494, 500 (1931)

(no new trial on damages alone where issue interwoven with liability such that trier of fact could not fairly hear one issue without hearing the other); Pryer v. C.O. 3 Slavic, 2251 F.3d 448, 454–55 (3d Cir. 2001) (partial reconsideration proper only "where it is plain that the error which has crept into one element of the [decision] did not in any way affect the determination of any other issue"); Pumphrey v. K.W. Thompson Tool Co., 62 F.3d 1128, 1133 (9th Cir. 1995) (partial remand improper "unless it clearly appears that the issue to be retried is so distinct and separable from others that a trial of it alone may be had without injustice") (quoting Gasoline Products, 283 U.S. at 500). Grace Baek should be given the opportunity to present her defense to the application of the unclean hands doctrine free of the burden of evidence and parties not properly considered by the court trying the issue.

**\*14** Accordingly, to the extent the Bankruptcy Court intends to continue prosecuting the unclean hands doctrine against Grace Baek, the Court directs the Bankruptcy Court to conduct a new trial.

**III. Conclusion**

For the foregoing reasons, the Court **vacates** all actions taken by the Bankruptcy Court in the 1391 Action for lack of subject matter jurisdiction. The Court directs the Bankruptcy Court to **dismiss** the 1391 Action for the same reason.

The Court also **vacates** the Bankruptcy Court's Memorandum Decision and Order After Bifurcated Trial on Unclean Hands issued in the 1454 Action and directs the Bankruptcy Court to conduct a new trial to the extent it intends to continue prosecuting the unclean hands doctrine against Grace Baek.

Finally, the Court **vacates** the Trustee's motion at Docket No. 64 in Richard Baek, et al v. John Olaf Halvorson, et al., 2:18-cv-07046 JVS (RAOx) to refer the action to Bankruptcy Court and confirm and/or substitute the Trustee as the real party in interest. To the extent the Trustee intends to move on the same grounds, the Trustee must re-notice the motion so that it may be re-briefed in light of the Court's findings in this Order.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2018 WL 6728484

**In re Halvorson, Not Reported in Fed. Supp. (2018)**

2018 WL 6728484

**End of Document**
© 2025 Thomson Reuters. No claim to original U.S. Government Works.

2009 WL 2448509
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States District Court, D. New Jersey.

The ROBERT PLAN CORPORATION,
Eagle Insurance Company, Inc., and
Newark Insurance Company, Inc., Plaintiffs,

v.

AMERICAN INTERNATIONAL GROUP
INC., AIU Insurance Company, American
Home Assurance Company, American
International Insurance Company, American
International Insurance Company of
California, Inc., and New Hampshire
Insurance Company, Defendants.

Civ. No. 09–200 (GEB)(DEA).
|
Aug. 10, 2009.

**Attorneys and Law Firms**

Daniel L. McAuliffe, Ruskin Moscou Faltischek. PC, Uniondale, NY, for Plaintiffs.

William John Bigham, Sterns & Weinroth, PC, Trenton, NJ, for Defendants.

**MEMORANDUM OPINION**

BROWN, Chief Judge.

**\*1** This matter comes before the Court upon Defendants American International Group Inc., AIU Insurance Company, American Home Assurance Company, American International Insurance Company, American International Insurance Company of California, Inc., and New Hampshire Insurance Company's (collectively "Defendants" or "AIG") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). [Docket # 15]. This Court has considered the parties' submissions and decided the matter without oral argument pursuant to Federal Rules of Civil Procedure Rule 78. For the reasons set forth below, this Court will grant Defendants' motion.

## I. BACKGROUND

### A. The Parties' Relationship

Defendants are insurance companies that, among other things, underwrite automobile insurance policies. (Defs.' Br. at 4.) Plaintiff The Robert Plan Corporation ("TRP"), together with its subsidiaries, plaintiffs Eagle Insurance Company ("Eagle") and Newark Insurance Company ("Newark," and together with TRP and Eagle, "Plaintiffs") are also automobile insurers. (Compl., attached as Exh. A to Notice of Removal, at ¶¶ 6–8 [Docket No. 1].) Defendants state that, for a period of time, TRP provided general agency services for Eagle, Newark and the Defendants in connection with a specialized segment of the automobile insurance business. (Defs.' Br. at 4 (citing Aff. of Glen M. Bronstein ("Bronstein Aff.") at ¶ 3)[Docket No. 15–3].)

AIG asserts that, beginning in 1999, it entered into a series of reinsurance agreements (the "Treaties") with Eagle and Newark such that AIG became the ultimate risk taker on all relevant insurance business written by AIG, Eagle or Newark, and that all such business would be administered by TRP. (Defs.' Br. at 4 (citing Bronstein Aff. at ¶ 4.)) However, according to AIG, by 2001 the parties' relationship began to show signs of strain due to TRP's malfeasance. (Defs.' Br. at 5 (citing Bronstein Aff. at ¶ 5.)) AIG also alleges that Newark and Eagle's financial condition deteriorated, such that they were placed under the administrative supervision of the New Jersey Department of Banking and Insurance ("NJDBI"). *Id.* at 4–5. AIG further asserts that, in an attempt to settle disputes arising under the Treaties, the parties entered into a second round of agreements, (the "Agreements") under which AIG was the sole underwriter of the relevant policies and TRP was to administer all policies. (Defs.' Br. at 5 (citing Bronstein Aff. at ¶ 6–7.)) Further, AIG alleges that it would fund TRP's operations necessary to administer these policies. *Id.* However, AIG contends that, despite this attempt to reconcile, the parties' relationship further deteriorated and in September 2005, AIG filed suit in the Supreme Court of the State of New York, New York County to enforce management rights under the Agreements and recover losses for TRP's misappropriation of funds. (Defs.' Br. at 5 (citing Bronstein Aff. at ¶ 8.))

### B. The Underlying State Court Action

**\*2** On June 29, 2007, TRP's management directed the filing of a complaint in The Superior Court of New

**Robert Plan Corp. v. American Intern. Group Inc., Not Reported in F.Supp.2d (2009)**

2009 WL 2448509

Jersey, Law Division, Mercer County (the "State Court Action"). According to the complaint in that action, the underlying dispute stems from two commutation agreements (the "Commutation Agreements") entered into by AIG and certain Plaintiffs, which were part of the broader agreements. (Compl. at ¶¶ 36–38). TRP alleges that AIG understated its "loss reserves" and "buy-out fee figures," and as a result, Eagle and Newark received less payments than they should have under the Commutation Agreements. (Compl. at ¶¶ 45–48, 52.)

Defendants aver that at the time that the State Court Action was filed, Eagle and Newark were in financial rehabilitation, with NJDBI acting as their rehabilitator. (Defs.' Br. at 6 (citing Bronstein Aff. at ¶ 11.)) Defendants further assert that eventually, both companies were placed into court-ordered liquidation proceedings and remain in liquidation today. *Id.* As per the liquidation order, the NJDBI was appointed as "Liquidator of Eagle Insurance and its Subsidiaries with all powers and authorities expressed or implied by N.J.S.A. 17:30 C–1, et seq. [*sic* ]" (Defs.' Br. at 6 (citing Order of Liquidation, attached as Exh. 1 to the Bronstein Aff at ¶ 3.)) Arguing that, under N.J. Stat. Ann. § 17:30C–1, the only party who can assert claims on behalf of Newark and Eagle is the NJBDI, AIG raised the issue of whether Eagle and Newark, by virtue of their liquidation status, could be plaintiffs in a suit without prior NJDBI permission. (Bronstein Aff. at ¶ 13.) Accordingly, TRP requested that the State Court Action be stayed pending judicial determination of the standing issue. (Pls.' Letter dated Dec. 5, 2007, attached as Exh. 2 to Bronstein Aff.) A consent order staying the proceedings to allow TRP to "promptly seek a judicial declaration" of this matter was entered on December 7, 2007. (Consent Order, attached as Exh. 3 to Bronstein Aff.) It appears from the record, however, that TRP never sought such a judicial determination. (Defs.' Br. at 7 (citing Bronstein Aff. at ¶ 14.)) Eleven months later, on August 16, 2008, the Superior Court issued 60–day notices of dismissal to TRP, indicating that the case would be dismissed for failure to prosecute if action was not taken as indicated in the notices. (Defs.' Br. at 7 (citing Affidavit of Deborah Levithan ("Levithan Aff.") at ¶ 5) [Docket No. 5–4].) Subsequently, on October 18, 2008 the State Court Action was dismissed without prejudice for failure to prosecute. (Defs.'s Br. at 7 (citing Levithan Aff. at ¶ 9.)

### C. The Bankruptcy Proceeding

On August 25, 2008, TRP filed a voluntary Chapter 11 petition in the United States Bankruptcy Court, Eastern District of New York (the "Bankruptcy Proceeding"). (Pls.' Opp. at ¶ 3.) TRP continues to operate its business and manage its property as a debtor-in-possession pursuant to Fed. R. Bankr.P. 1107 and 1108. (Pls.' Opp. at ¶ 4.)

### D. The Instant Motion

**\*3** Plaintiffs filed their Notice of Removal to this Court on January 14, 2009 pursuant to 28 U.S.C. § 1452 and Fed. R. Bankr.P. Rule 9027(a). (Notice of Removal at ¶ 1.) Subsequently, AIG filed the instant motion, challenging this Court's subject matter jurisdiction .[1] The matter was fully briefed as of April 6, 2009.

[1]      Plaintiffs also filed a Motion to Transfer Venue to the Eastern District of New York on February 2, 2009. [Docket No. 5].

## II. DISCUSSION

### A. Standard of Review for Motions for Dismiss for lack of Subject Matter Jurisdiction

A motion to dismiss under Federal Rule of Civil Procedure 12(b) (1) challenges the Court's "authority or competence to hear and decide the case before it." 5B Charles Alan Wright & Arthur R. Miller, Federal Practice And Procedure § 1350 (3d ed.2004). In the absence of subject matter jurisdiction, this Court is without power to hear the case. *See Cohen v. Kurtzman,* 45 F.Supp.2d 423, 429 (D.N.J.1999). The party asserting jurisdiction bears the burden of demonstrating that jurisdiction is proper. *Packard v. Provident Nat'l Bank,* 994 F.2d 1039, 1045 (3d Cir.1993) (citations omitted). Moreover, the Court is obligated to examine the issue of subject matter jurisdiction even if the parties concede the existence of jurisdiction. *See Pa. Nurses Ass'n v. Pa. State Educ. Ass'n,* 90 F.3d 797, 801 (3d Cir.1996). In making its determination, the Court is not confined to examining the face of the pleading, but may consider other evidence demonstrating the existence or lack of jurisdiction, and may make factual findings when necessary to the extent that there are disputes of fact. *See Berardi v. Swanson Mem'l Lodge No. 48 of Fraternal Order of Police,* 920 F.2d 198, 200 (3d Cir.1990).

### B. The Court Does Not Have Subject Matter Jurisdiction

Plaintiffs filed their notice of removal relying upon 28 U.S.C. § 1452(a) and Fed. R. Bankr.P. 9027(a), arguing that removal is appropriate because the claims at issue in the State Court Action relate to the Bankruptcy Proceeding and therefore are

**Robert Plan Corp. v. American Intern. Group Inc., Not Reported in F.Supp.2d (2009)**

2009 WL 2448509

"core matters within the meaning of 28 U.S.C. § 157." (Notice of Removal at ¶ 7.) 28 U.S.C. § 1452(a) provides in relevant part:

> a *party* may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

As such, this provision allows for removal by both the plaintiff and defendant in an action. *See e.g. GSL of Ill., LLC v. Pitt Penn Oil Co., LLC,* No. 09cv0571, 2009 U.S. Dist. LEXIS 51428 at *5, 2009 WL 1691815 (noting that Section 1452 "continues to allow plaintiffs to remove" actions to federal district courts.) Additionally, Fed. R. Bankr.P. 9027(a) permits removal to United State Bankruptcy Courts, providing that "a notice of removal shall be filed with the clerk for the district and division within which is located the state or federal court where the civil action is pending."

**\*4** Although Fed. R. Bankr.P. 9027 sets forth the procedure for removal under bankruptcy law, it does not itself grant a district court the jurisdiction to hear a case. *Ret Sys. of Ala. v. J.P. Morgan Chase & Co.,* 285 B.R. 519, 524 n. 7 (M.D.Al.2002). Further, section 1452(a) also requires that, before a matter may be removed to federal court, it must be established that a pending cause of action exists. *MHM Sponsors Co. v. Permanent Mission of Pakistan to United Nations,* 672 F.Supp. 752, 753 (S.D.N.Y.1987) ( "Fundamental to the right of removal is the requirement that there be a case to remove."). Thus, before a court can conclude whether it has jurisdiction over a matter pursuant to either of these two provisions, it must first determine whether there is a claim or cause of action in existence such that removal is possible. As such, the Court must determine whether the State Court Action was "pending" when Plaintiffs filed the notice of removal.

Plaintiffs contend that, at the time they filed the Notice of Removal, the State Court Action could have been reopened, despite having been previously dismissed for failure to prosecute, and therefore was still "pending" for purposes of removal. (Pls.' Opp. at ¶ 6 (citing *Holmes v. AC & S, Inc.,* 388 F. Supp 2d 663, 667 (E.D.Va.2004.)) AIG argues that the legal effect of the dismissal is that there is no longer a live case or controversy, and that a court's ability to reopen a dismissed case is insufficient to render the matter "pending." (Defs.' Rep. at 1–2.)

The court agrees with AIG and concludes that based on the dismissal, the State Court Action was not pending at the time that Plaintiffs filed their notice of removal. The Court is not persuaded by the case law that Plaintiffs cite in support of their argument. For example, in *Homes,* a clerical error led to the case's dismissal. *Holmes,* 388 F.Supp.2d at 665. Two days after the improper dismissal, plaintiffs filed a notice of removal. *Id.* The court found that the dismissal of the state court action did not preclude the case's removal, as it was entered in error and did not reflect the intentions of the parties. *Id.* at 666. As such, the removal of the state court action in *Holmes* was proper, as the prior dismissal was the result of a mistake and was not related to actions of the parties nor merits of the case. *Id.* at 670. The Court also agrees with AIG that Plaintiffs' reliance on *In re Meyerland,* 960 F.2d 512 (5th Cir.1992) is misplaced. (Defs.' Rep. at 4–5.) *Meyerland* involves the issue of whether a judgment is "final" for the purposes of the *Rooker–Feldman* doctrine, which relates to the finality of state court judgments rendered by the highest court in the state. *Meyerland Co.,* 960 F.2d at 515–16. As such, *Meyerland* is inapposite.

In contrast, the Court finds the case law cited by Defendants persuasive. In *Brown v. District Director, I.R.S.,* No. 01–D–1625(CBS), 2002 U.S. Dist LEXIS 12963 (D. Co. June 4, 2002) the plaintiff filed a civil suit in state court which was dismissed four days later. A little more than two months after the dismissal, the defendant filed a notice of removal, unaware that the complaint had already been dismissed. *Id.* at *6. Despite the fact that the defendant was unaware of the dismissal at the time it filed the Notice of Removal, the Magistrate Judge nevertheless recommended that the action be dismissed because "[a]t the time of the filing of the Notice of Removal, there was no case or controversy for the federal court to decide. Therefore this court lacks subject matter jurisdiction over this civil action." *Id.* at *7.

**\*5** In the instant case, there was no case or controversy at the time Plaintiffs filed their Notice of Removal. The State Court Action was dismissed as direct result of Plaintiffs' failure to prosecute the case after Plaintiffs were given appropriate notice of the pending dismissal. (Levithan Aff. at ¶¶ 4–9 (citing Lexis Nexis Docketing Report for State Court Action attached as Exh. A; State Court Case Management System Docketing Report for State Court Action attached as Exh. B.)) As such, dismissal was entered properly and in accordance with New Jersey State Court Rules and was not the result of a clerical error. (Levithan Aff. at ¶¶ 4–9 (citing Exhs. A

**Robert Plan Corp. v. American Intern. Group Inc., Not Reported in F.Supp.2d (2009)**

2009 WL 2448509

and B attached thereto.))[2] Additionally, Plaintiffs did not file their Notice of Removal a mere few days after the State Court Action was dismissed, as was the case in *Holmes. Holmes, 388 F.Supp.2d at 665*. Rather, the Notice of Removal was filed eleven months after the State Court Action was dismissed. (Notice of Removal at 1.) Further, Plaintiffs have not put forth any evidence indicating that they have even taken steps to restore the State Court Action. (Defs.' Rep. at 1.) In light of the foregoing, the Court concludes that the State Court Action was not properly removed to this Court.

[2]   While Plaintiffs suggest that there is a legitimate dispute as to whether the State Court Action was properly dismissed, they have not stated any basis or provided any support for this argument.

Plaintiffs also argue that N.J. Ct. Rule 4:50 supports the assertion that the State Court Action was properly removed.[3] (Pls.' Opp. at ¶ 7.) Defendants, however, counter that such an interpretation would be "unworkable, at best." (Defs.' Rep. at 3.) Specifically, AIG notes that three of the bases for relief under N.J. Ct. Rule 4:50 are not subject to the one-year time limitation, and thus, under the Plaintiffs suggested interpretation, a case could be removed many years after final judgment was entered and the time to appeal expired. *Id.* (citing N.J. Ct. R. 4:50–2). In light of the fact that Plaintiffs have not pointed to any authority to support this expansion of N.J. Ct. Rule 4:50, the Court agrees with AIG, and declines to adopt Plaintiffs' interpretation.

[3]   N.J. Ct. Rule 4:50 provides in relevant part:
[o]n motion, with briefs, and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment or order for the following reasons: (a) mistake, inadvertence, surprise, or excusable neglect; (b) newly discovered evidence which would probably alter the judgment or order and which by due diligence could not have been discovered in time to move for a new trial under R. 4:49; (c) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (d) the judgment or order is void; (e) the judgment or order has been satisfied, released or discharged, or a prior judgment or order upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment or order should have prospective application; or (f) any other reason justifying relief from the operation of the judgment or order.

Plaintiffs further assert that a dismissal at this stage in the proceedings would result in significant prejudice to them. (Pls.' Opp. at ¶ 9.) The Court does not find this argument persuasive. As AIG notes, the State Court Action was not dismissed "out of thin air." (Defs.' Rep. at 5.) Instead, proper notices of removal were sent to Plaintiffs providing them adequate time to resume active litigation of the matter. (Levithan Aff. at ¶¶ 4–9 (Exhs. A and B attached thereto.)) Plaintiffs' failure to take such action resulted in the dismissal of the State Court Action. *Id.* at ¶ 7. Plaintiffs also reference a Bankruptcy Court order that they assert requires that all litigation relating the TRP and its bankruptcy be removed to Federal Court by a particular date as support for its prejudice argument. (Pls.' Opp. at ¶ 9.) However, Plaintiffs have not put forth any evidence of such an order's existence nor what the order mandates. Nonetheless, even assuming that such an order exists, there are avenues by which Plaintiffs may seek relief from it. As Defendants note, Fed. R. Bankr.P. 9006(b) allows for TRP to seek an extension of the removal deadline from the Bankruptcy Court if it can successfully reinstate the case at the state court level. (Defs.' Rep. at 5; *see also* Fed R. Bankr.P. 9006(b).) Regardless, as AIG further notes, any prejudice dismissal may cause Plaintiffs is irrelevant to the Court's jurisdictional injury because subject matter jurisdiction determinations are not discretionary. *See Cohen v. Kurtzman,* 45 F.Supp.2d 423, 429 (D.N.J.1999).

**\*6** In light of the foregoing, the Court concludes that it does not have subject matter jurisdiction over this matter.

**C. Plaintiffs' Motion to Transfer is Moot**

As previously noted, Plaintiffs filed a Motion to Transfer Venue to the Eastern District of New York on February 2, 2009. [Docket No. 5]. In light of the Court's holding that it does not have subject matter jurisdiction over this matter, Plaintiffs' motion is dismissed as moot.

**III. CONCLUSION**

For the foregoing reasons, Defendants' motion is granted. An appropriate form of order is filed herewith.

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 2448509

**Robert Plan Corp. v. American Intern. Group Inc., Not Reported in F.Supp.2d (2009)**

2009 WL 2448509

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

2003 WL 367859
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

HARVÉ BENARD LTD., Plaintiff,

v.

NATHAN ROTHSCHILD, K.I.D.
INTERNATIONAL, INC. and Amazing
Savings/JBS Liquidators, Inc., Defendants.

No. 02 Civ.4033 (JGK).
|
Feb. 19, 2003.

**Synopsis**
Designer/distributor brought trademark and trade dress infringement action against corporations based on their alleged offering for sale of infringing products. Defendants moved to transfer action for purpose of being referred to bankruptcy court in transferee district. The District Court, Koeltl, J., held that: (1) defendant could not "remove" action to same District Court; (2) proposed transferee court had personal jurisdiction over individual trademark defendant who had been chief executive officer of debtor company; and (3) transfer was appropriate given relatedness of trademark action to bankruptcy proceeding.

Motion granted.

*OPINION AND ORDER*

KOELTL, J.

**\*1**  The plaintiff, Harvé Benard, brings this action against the defendants, Nathan Rothschild ("Rothschild"), K.I.D. International, Inc. ("KID"), and Amazing Savings/JBS Liquidators, Inc. ("Amazing Savings") alleging claims of trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); false designation of origin and other violations of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); infringement of common law trademark rights; unfair competition; and violation of Section 360–1 of the New York General Business Law. Defendant KID filed a Notice of Petition for Removal asking the Court to remove the

case from itself only to return the case to itself for reference to the Bankruptcy Court for the Southern District of New York. In response, plaintiff Harvé Benard moved the Court to strike the Notice of Petition for Removal or, in the alternative, to remand the action back to this same Court. KID then filed a cross-motion to transfer the case to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1404(a) so that it can be referred to the Bankruptcy Court for the District of New Jersey where an allegedly related case concerning non-party D. Klein & Son, Inc. ("D. Klein & Son") is now pending. All defendants join in that motion.

The substance behind these seemingly bizarre procedural maneuverings is that the plaintiff who brought this action in this Court seeks to have the case remain here. The defendants seek to transfer the case to the District of New Jersey so that it can be referred to the Bankruptcy Court in that District as related to the D. Klein & Son bankruptcy proceeding.[1]

[1]  Defendant Rothschild also filed a pro se Motion to Dismiss the Complaint against him but withdrew that motion at oral argument on November 26, 2002. (Tr. at 34–35.) Rothschild has also served a counterclaim which he has not withdrawn and which should remain with the rest of the case.

I.

The following facts are alleged in the Complaint except as noted. The plaintiff, Harvé Benard, is a New York corporation with its principle place of business in New York. (Compl.¶ 2.) Harvé Benard is engaged in the promotion, distribution and sale of high quality goods, including clothing, accessories, handbags and leather goods ("Harvé Benard Products"). (*Id.* at ¶ 3.) Defendant KID is a New Jersey corporation with its principle place of business in New Jersey. (*Id.* at 6.) Rocky Stefansky is the sole officer and shareholder of KID. (Verification of Rocky Stefansky dated Sept. 6, 2002 ("Stefansky Verif.") ¶ 1.) Defendant Amazing Savings is a New York Corporation with a business address in New York. (Compl.¶ 5.)

Bernard Holzman and his design team have designed, manufactured or licenced all Harvé Bernard Products for over thirty years. (*Id.* at ¶ 13.) Harvé Benard is the owner and registrant of multiple trademarks for clothing under the names "Harvé Benard", "Signature by Harvé Benard", "Harvé by Harvé Benard", "Benard Sport" and "Benard Couture" ("Harvé Benard Trademarks"). (*Id.* at ¶¶ 4, 10.)

As owner, Harvé Benard works to produce and promote its products, (*Id.* at ¶ 11.), the net worldwide sales of which exceeded $100,000,000.00 in 2001. (*Id* . at ¶ 12.) Harvé Benard spent hundreds of thousands of dollars that same year to promote and advertise its products. (*Id.*) The plaintiff has devoted significant time, effort and money to develop trade dress ("Harvé Benard Trade Dress") featuring one or more of the Harvé Benard Trademarks for use on Harvé Benard Products. (*Id.* at ¶ 14.) The company maintains strict design and quality controls over the manufacture of Harvé Benard Products and similarly stringent controls govern their subsequent distribution. (*Id.* at ¶ 13.)

**\*2** Harvé Benard sells some of its goods through licensees. In 1998, D. Klein & Son entered into a license agreement ("License Agreement") with Harvé Benard to manufacture and sell women's handbags. (*Id.* at ¶ 16; Verification of Nathan Rothschild dated Dec. 3, 2002 ("Rothschild Verif.") ¶¶ 2, 7.) D. Klein & Son is not, and has never been, a defendant in this action. The plaintiff alleges that defendant Rothschild, a New York resident, served as chief executive officer of D. Klein & Son until its bankruptcy in 1999 and thus had actual knowledge of the Harvé Benard Trademarks. (Compl.¶¶ 7, 17.) The plaintiff further contends that the three defendants, with actual or constructive knowledge, distributed, reproduced, or offered for sale various handbags bearing trademarks or trade dress infringing actual Harvé Benard Trademarks and Harvé Bernard Trade Dress ("Infringing Items"). (*Id.* at ¶¶ 19, 21, 23, 24.) Harvé Benard claims that the Infringing Items bore marks intended to imitate Harvé Bernard Trademarks and were sold, offered for sale, distributed or advertised in a way likely to cause confusion or mistake, or to deceive. (*Id.* at ¶ 20.) These marks consisted of hardware, hangtags and imprinted materials falsely identifying the Infringing Items as Harvé Benard products. (*Id.* at ¶¶ 21, 24.)

At an unspecified time between December 1998 and March 1999 defendant KID purchased from D. Klein & Son certain items ("Merchandise"), "including, potentially, [items subject to the License Agreement]." (Stefansky Verif. ¶ 3; Notice of Petition for Removal dated June 26, 2002 ("Removal Pet.") ¶ 2; Rothschild Verif. ¶ 8.) KID denies violating the plaintiff's trademark or other rights. (Stefansky Verif. ¶ 18.) But finding the Merchandise defective, KID refused to pay D. Klein & Son the balance of the purchase price. (Stefansky Verif. ¶ 5.)

On or about May 18, 1999, D. Klein & Son filed for bankruptcy protection under Chapter 11 of the United States

Bankruptcy Code in the District of New Jersey. (Stefansky Verif. ¶ 6; Removal Pet. ¶ 4.) The case was converted to a Chapter 7 filing on or about September 23, 1999 and Robert Wasserman ("Trustee") was appointed trustee for the bankruptcy estate. (Stefansky Verif. ¶¶ 6–7; Removal Pet. ¶¶ 4–5.) The License Agreement between Harvé Benard and D. Klein & Son allegedly remained in effect at the time that D. Klein & Son filed its bankruptcy petition. (Stefansky Verif. ¶ 8.) The Trustee failed to assume the License Agreement within 60 days of the filing and failed to seek an extension of the 60–day time limit to do so. (*Id.*) As a result, the License Agreement was deemed rejected pursuant to Section 365(d)(1) of the Bankruptcy Code. (Removal Pet. ¶ 6.) The Trustee and First Union National Bank ("FUNB") claimed a blanket lien on all of D. Klein & Son's assets, including the Merchandise in KID's possession, and threatened to either repossess the Merchandise or to sue KID for the unpaid balance. (Stefansky Verif. ¶ 9; Removal Pet. ¶ 7.) The parties ultimately reached an agreement, approved by the United States Bankruptcy Court for the District of New Jersey, in which KID would sell the Merchandise before turning over the profits to the Trustee and FUNB. (Stefansky Verif. ¶ 10; Removal Pet. ¶ 8; United States Bankruptcy Court for the District of New Jersey Order filed Oct. 30, 2002 ("N.J.Order") attached as Ex. A to Stefansky Verif.) In exchange, KID would receive a 12% commission on net sales proceeds after satisfying a credit of roughly $240,000 held by FUNB. (Settlement Agreement ¶ 4.2 attached as Ex. B to Stefansky Verif.)

**\*3** The plaintiff claims that KID had actual knowledge of the Harvé Benard Trademarks (Compl.¶ 18) yet served as an intermediary between D. Klein & Son and defendant Amazing Savings in the sale of the Infringing Items. (*Id.* at ¶ 26.)[2] Harvé Benard also contends that defendant Rothschild represented that D. Klein & Son manufactured the Infringing Items as a licensee of Harvé Benard while aware that the License Agreement had already terminated. (*Id.* at ¶ 27.) One alleged effect of Rothschild's actions was to encourage defendant Amazing Savings to continue to sell the Infringing Items in the face of a cease and desist letter dated February 14, 2002 sent to Amazing Savings by Harvé Benard. (*Id.* at ¶ 25.)

2      KID alleges that it sold the Merchandise to an entity know as Zebra, and Zebra later sold the goods to defendant Amazing Savings. (Stefansky Verif. ¶ 15.)

Defendant KID filed a Notice of Petition for Removal of this proceeding on June 27, 2002 seeking to remove this action from the Southern District of New York to the same Court and

then have it referred to the Bankruptcy Court for the Southern District of New York.

## II.

Defendant KID's Removal Petition seeks to fit a round peg into a square hole. It is clear that this action is currently pending before this Court. The action was properly brought in this Court and there is federal question subject matter jurisdiction because the Complaint alleges violations of the Lanham Act. *See* 28 U.S.C. § 1338(a) (jurisdiction over civil actions arising under federal statutes relating to, among other matters, trademark). However, KID now wishes to "remove" the case to this very same Court pursuant to 28 U.S.C. 1452(a) which reads:

> A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

Section 1334(b) grants district courts "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b).

The notion of removing a case from this Court to itself defies logic. A review of the scant case law on the topic supports this Court's view that "removing" this case from the Court *to the Court* contradicts the plain language of 28 U.S.C. § 1452(a).

In *Mitchell v. Fukuoka Daiei Hawks Baseball Club,* 206 B.R. 204 (C.D.Cal.1997), the Bankruptcy Court for the Central District of California faced an analogous procedural request from the plaintiff. *Mitchell* involved a contract dispute between the plaintiff, a professional baseball player, and the defendant, a Japanese baseball team. The parties reached an out of court settlement, but the plaintiff later filed suit in the Central District of California for breach of that agreement. *Id.* at 206–07. Roughly one year later, the plaintiff filed for Chapter 11 bankruptcy in the Bankruptcy Court for the Southern District of California, where the plaintiff resided, although he could have done so in the Central District of California. *Id.* Pursuant to 28 U.S.C. § 1452(a), the plaintiff next "removed" the lawsuit from the Central District of California *to the Central District of California. Id.* at 207.

The "removed" action was then automatically referred to the United States Bankruptcy Court for the Central District of California.[3] *Id.* at 208. The plaintiff then filed a motion with the bankruptcy court to transfer the case to the Southern District of California for referral to the Bankruptcy Court for the Southern District of California. *Id.*

3    28 U.S.C. § 157(a) provides that "Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." In the Southern District of New York, automatic reference under 28 U.S.C. § 157(a) was implemented pursuant to the General Reference Order of then Acting Chief Judge Robert J. Ward on July 10, 1984. *Worldcom Network Serv., Inc. v. Al–Khatib,* 96 Civ. 4492, 1998 WL 23254, at *2 (S.D.N.Y. Jan.22, 1998).

*\*4* In response to the plaintiff's motion to transfer, the Bankruptcy Court for the Central District of California issued an Order to Show Cause why the "removed" action should not be remanded to the District Court for the Central District of California. The bankruptcy judge focused on the plain language of 28 U.S.C. § 1452(a) and found that to allow the plaintiff to "remove" the case from one court to the very same court would defy the "accepted rule of statutory construction that statutes should be construed in a manner that avoids an absurd result."[4] *Id.* at 211; *see also id.* at 209–11; *accord Sharp Electronics Corp. v. Deutsche Fin. Serv. Corp.,* 222 B.R. 259, 262–64 (D.Md.1998) (finding that the plain meaning of "remove" in 28 U.S.C. § 1452(a) does not permit removal of an action from a district court to itself to be automatically referred to the bankruptcy court in the same district). *Cf.* 1 COLLIER ON BANKRUPTCY ¶ 3.07[1] (15th ed. revised 2002) (conceding that "[a]lmost every court speaking to the issue has concluded that it is legally impossible to remove a case from a particular district court to that same district court" but disagreeing with that result). Moreover, the *Mitchell* court found that the proper way to move a case from a district court to bankruptcy court in the same district would be by motion for referral. *Mitchell,* 206 B.R. at 210; *see also Sharp Electronics,* 222 B.R. at 260, 264.

4    The court went on to explain that the language of Section 1452(a) "must logically be interpreted as referring to the fact that proceedings from federal courts *other than [the] district court* can be removed to [the] district court, unless the federal proceeding in issue is pending in tax court, in which case Section 1452 prohibits it from being

removed. For example, a proceeding from the Court of Federal Claims or the Court of Veterans Appeals could be removed to district court pursuant to 28 U.S.C. § 1452(a). Once removed to the district court, the removed proceeding would then be referred to the bankruptcy court for that district, pursuant to whatever reference rules that district had in effect." *Mitchell,* 206 B.R. at 211 (italics in the original).

The Court has found no case law from the Second Circuit on the question of intra-court removal. As such, the Court finds no reason to defy the plain language of Section 1452 and interpret the statute so as to allow KID to "remove" this action from this Court to this Court for the purpose of obtaining an automatic referral to the Bankruptcy Court for the Southern District of New York. The Petition for Removal is denied and the motion to strike the Petition for Removal is granted.

It should also be noted that there is no reason why KID followed the seemingly bizarre procedure of asking the Court to transfer this case to itself so that it could be referred to the bankruptcy court in this district when there is no related bankruptcy case pending in this district. What KID really wants to do is to have this court transfer this case to the District of New Jersey so that the case can be referred to the bankruptcy court in that district where a related bankruptcy case is in fact pending.

Should the "removal" have been granted, the plaintiff also moves to remand the action to this Court pursuant to 28 U.S.C. § 1452(b). Because the case never left the Court, the motion to remand is denied as moot.

### III.

KID has filed a cross-motion to transfer this action to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1404(a) which provides that, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." KID seeks the transfer in order to obtain a subsequent referral to the Bankruptcy Court for the District of New Jersey. The plaintiff opposes the motion while all defendants support it.

**\*5** The plaintiff argues that this Court lacks subject matter jurisdiction over the case and thus has no authority to transfer the case pursuant to Section 1404(a). This argument is frivolous. The Court has jurisdiction over the current action because the plaintiff brought suit for violation of the Lanham Act, thus establishing federal question jurisdiction. *See* 28 U.S.C. § 1338(a).

The plaintiff also contends that the Court cannot transfer the case to the District of New Jersey because it is not clear that the case could have been brought in the District of New Jersey. The plaintiff disputes that it could have sued Rothschild in the District of New Jersey.[5] A federal court applies the forum state's personal jurisdiction rules in a case brought under federal question jurisdiction where a defendant resides outside the forum state and where there is no specific federal statute governing personal jurisdiction rules. *PDK Labs, Inc. v. Friedlander,* 103 F.3d 1105, 1108 (2d Cir.1997); *Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n,* 819 F.2d 434, 436 (3d Cir.1987); *Stewart v. Vista Point Verlag & Ringier Publishing,* 99 Civ. 4225, 2000 WL 1459839, at \*2 (S.D.N.Y. Sept.29, 2000). Such is the case for actions brought under the Lanham Act. *Stewart,* 2000 WL 1459839, at \*2. New Jersey's long arm statute is as broad as the limits of the Fourteenth Amendment Due Process Clause allow as defined by the Supreme Court's decision in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). *Cartet Savings Bank, FA v. Shushan,* 954 F.2d 141, 145, 147 (3rd Cir.1992). As the moving party, KID bears the burden of showing that venue and personal jurisdiction would be proper as to the defendants in the District of New Jersey. *TM Claims Serv. A/S/O v. KLM Royal Dutch Airlines,* 143 F.Supp.2d 402, 403 (S.D.N.Y.2001).

5      The plaintiff questions personal jurisdiction solely as to defendant Rothschild.

In *Falik v. Smith,* 884 F.Supp. 862 (S.D.N.Y.1995), Judge Carter of this Court transferred the case to the District of New Jersey after finding that the action should have been brought in New Jersey originally. The court found that the defendant, a California resident, had the requisite minimum contacts with New Jersey as a general partner of a New Jersey general partnership who engaged in continuous and systematic business in New Jersey and purposely availed himself of the benefits and protections of the state's laws. *Id.* at 867. Defendant Rothschild has similarly maintained sufficient minimum contacts so as to be on notice that he could be subject to suit in New Jersey courts. In 1995, Rothschild purchased D. Klein & Son, a New Jersey corporation with its principal place of business in New Jersey. (Rothschild Verif. ¶¶ 2–3, 5.) He is the sole officer and director of the company and the sole member of Another Opportunity, L.L.C., which is

the sole shareholder of D. Klein & Son. (*Id.* at ¶ 6.) Rothschild negotiated the License Agreement between Harvé Benard and D. Klein & Son from the latter's New Jersey office, and Rothschild conducted all calls and meetings with the plaintiff regarding the License Agreement from his New Jersey office. (*Id.* at ¶¶ 7, 9.) Moreover, venue, which is not contested, is proper in the District of New Jersey under 28 U .S.C. § 1391(b)(2) as "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated."

**\*6** Once the threshold test has been met and it is determined that this action could have been brought in the District of New Jersey, the Court must determine whether transfer is warranted based on an evaluation of the deference owed to the plaintiff's choice of forum, the convenience to the parties and witnesses and the interests of justice, "a term broad enough to cover the particular circumstances of each case, which in sum indicate that the administration of justice will be advanced by a transfer." *Schneider v. H.A. Sears,* 265 F.Supp. 257, 263 (S.D.N.Y.1967) (Weinfeld, J.); *see also Capital Venture Int'l v. Network Commerce, Inc.,* 01 Civ. 4390, 2002 WL 417246, at \*1 (S.D.N.Y. Mar.15, 2002); *Mishnayot v. MGM Mirage,* 01 Civ. 9955, 2002 WL 257849, at \*1 (S.D.N.Y. Feb.22, 2002); *Wils v. Schulman,* 91 Civ.2078, 1991 WL 143444, at \*2 (S.D.N.Y. July 24, 1991).[6]

[6]   The plaintiff claims that the interests of justice would not be served by a transfer because the defendants "removed" only the main action in the case and not Rothschild's counterclaim which alleges slander and malicious prosecution. Thus, the plaintiff contends, two courts would have to work to resolve the case. However, the Court rejects the plaintiff's argument because no part of this case was ever "removed" from this Court and the case can be transferred as a whole to the District of New Jersey.

In this case, while deference is owned to the plaintiff's choice of forum and while the convenience of the parties and witnesses would not be greatly affected by a transfer from the Southern District of New York across the river to the District of New Jersey, the interests of justice counsel strongly in favor of transfer. "There is a strong policy favoring the litigation of related claims in the same tribunal in order that pretrial discovery can be conducted more efficiently, duplicitous litigation can be avoided, thereby saving time and expense for both parties and witnesses, and inconsistent results can be avoided.... Accordingly, cases often have cited

the pendency of related actions in another court as strongly supporting the transfer of an action to that court." *Capital Venture,* 2002 WL 417246, at \*2 (quoting *Savin v. CSX Corp.,* 657 F.Supp. 1210, 1214 (S.D.N.Y.1997)).

The plaintiff claims that this action is not sufficiently related to the D. Klein & Son bankruptcy to justify transferring the case to District of New Jersey where it can be referred to the Bankruptcy Court. However, "[t]he test for determining whether litigation has a significant connection with a pending bankruptcy proceeding is whether its outcome might have any 'conceivable effect' on the bankrupt estate. If the question is answered affirmatively, then litigation falls within the 'related to' jurisdiction of the bankruptcy court." *Ames Dept. Stores, Inc. v. TJX Co., Inc.,* 190 B.R. 157, 160 (S.D.N.Y.1995) (quoting *Publicker Indus. Inc. v.. United States,* 980 F.2d 110, 114 (2d Cir.1992)).

This case presents ample reasons to transfer the action to the District of New Jersey to be referred to its Bankruptcy Court. First, transfer would promote the interests of justice because the D. Klein & Son bankruptcy proceeding would likely be affected by the outcome of this action. For example, KID claims a right to indemnification from the Trustee of the bankruptcy estate. Resolution of this issue would affect both the outcome of Harvé Benard's suit and the obligations of the Trustee with respect to the bankruptcy estate. Placing all matters before the relevant bankruptcy court would further judicial economy and efficient resolution of the case. Second, the question has arisen as to whether the Infringing Items were part of the bankruptcy estate at all. In spite of the plaintiff's assertions to the contrary, the bankruptcy court is clearly best suited to assess this issue in view of its prior experience with the estate. Third, as a defense to this action, KID claims that the Settlement Agreement specifically exempts KID from the chain of title for the Merchandise.[7] (Settlement Agreement ¶ 4.5; Stefansky Verif. ¶ 11; Removal Pet. ¶ 9.) KID also claims that the Settlement Agreement preserves any indemnification claims that KID might possess against FUNB and D. Klein & Son's bankruptcy estate.[8] (Settlement Agreement ¶ 7.1; Stefansky Verif. ¶ 13; Removal Pet. 11.) Finally, KID contends that "the Order [of the New Jersey bankruptcy court] provides that any sale of Merchandise shall be 'free and clear of all liens, claims, interests and encumbrances pursuant to section 363(b), (f) and (h) of the Bankruptcy Code,' including rights arising under the License Agreement." (Stefansky Verif. ¶ 12; Removal Pet. ¶ 10.) The Bankruptcy Court for the District of New Jersey is in the best position to determine whether the Settlement Agreement

and Order in fact shield KID from liability or provide for indemnification should Harvé Benard prevail on the merits. If the bankruptcy judge determines that the case is not properly before that court, the action can be remanded to the district court for resolution.[9]

[7]    To support this contention, KID cites Paragraph 4.5 of the Settlement Agreement which reads, "In order to effectuate a sale of Inventory, KID shall issue to the buyer a bill of sale indicating that KID is selling such Inventory for the benefit of FUNB, as secured lender."

[8]    Paragraph 7.1 of the Settlement Agreement reads, "Upon the Effective Date, the parties shall exchange mutual reciprocal general releases excepting out from such releases ... any claim for indemnification and/or contribution regarding any claim brought against any or all of them relating to any of their business activities in connection with the debtor...." The parties executed the relevant releases on December 1, 2000. (Stefansky Verif. ¶ 14; Release by KID to Trustee dated December 1, 2000 attached as Ex. C to Stefansky Verif.)

[9]    The district court's ability to withdraw the reference should also resolve the plaintiff's concern that it would not receive a jury trial in the Bankruptcy Court. The bankruptcy court could resolve pre-trial matters before remanding the case to the district court, if necessary, for trial. All of the arguments could be made in connection with a motion to withdraw the reference in the District of New Jersey. *See, e.g., In re Orion Pictures,* 4 F.3d 1095, 1101–1102 (2d Cir.1993); *In re Ranch I Inc.,* C2 Civ. 4417, 2002 WL 31175184, at *2 (S.D.N.Y. Sept.27, 2002).

**\*7** In view of the relatedness of this case to the D. Klein & Son bankruptcy and the expertise of the bankruptcy court, the motion to transfer this case to the District of New Jersey is granted.

CONCLUSION

For the reasons explained, the plaintiff's motion to strike the removal petition is granted. The plaintiff's request, in the alternative, to remand the action is denied as moot. Defendant KID's cross-motion to transfer the action to the District of New Jersey is granted. The Clerk is directed to transfer this case to the District of New Jersey.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2003 WL 367859

678 Fed.Appx. 56 (Mem)
This case was not selected for
publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1
generally governing citation of judicial decisions
issued on or after Jan. 1, 2007. See also U.S.Ct.
of Appeals 3rd Cir. App. I, IOP 5.1, 5.3, and 5.7.
United States Court of Appeals, Third Circuit.

Maverick SCOTT, Appellant

v.

NEW YORK ADMINISTRATION
FOR CHILDREN'S SERVICES

No. 16-3911
|
Submitted for Possible Dismissal Due to
a Jurisdictional Defect and for Possible
Summary Action Pursuant to Third Circuit
LAR 27.4 and I.O.P. 10.6 February 16, 2017
|
(Opinion filed: February 28, 2017)

On Appeal from the United States District Court for the District of New Jersey, (D.N.J. Civ. No. 2:15-cv-07731), District Judge: Honorable Madeline C. Arleo

**Attorneys and Law Firms**

Maverick Scott, Pro Se

Before: MCKEE, JORDAN and RESTREPO, Circuit Judges

OPINION[*]

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PER CURIAM

Maverick Scott filed in the District Court a "Notice of Removal" that referenced child-neglect proceedings in New York City initiated by the New York Administration for Children's Services and which involved Scott and his minor son. Scott later filed additional documents titled "Notice of Removal." By order entered on October 19, 2016, the District Court sua sponte remanded Scott's case to "the Family Court of the State of New York." The District Court reasoned that it lacked "removal jurisdiction under 28 U.S.C. § 1441(a)" because "the Family Court matter is pending in New York, which is not encompassed by this district." Scott timely appealed.

We first address our jurisdiction to hear this appeal. Under 28 U.S.C. § 1447(c), a district court may only remand proceedings to state court on grounds that fall into one of two categories: (1) defects in subject matter jurisdiction; and (2) any other defects in removal that are identified in a timely remand motion. While appellate review of remand orders is barred by statute, see 28 U.S.C. § 1447(d), an exception applies when a district court exceeds its authority by remanding on grounds not permitted by § 1447(c). See Thermtron Prods., Inc. v. Hermansdorfer, 423 U.S. 336, 345, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976); see also Things Remembered, Inc. v. Petrarca, 516 U.S. 124, 127, 116 S.Ct. 494, 133 L.Ed.2d 461 (1995). Thus, a remand that does not comport with § 1447(c) escapes the appellate-review bar of § 1447(d). In re FMC Corp. Packaging Sys. Div., 208 F.3d 445, 451 (3d Cir. 2000).

Here, the District Court remanded proceedings sua sponte because it was not, as required by 28 U.S.C. § 1441(a), "the district court ... for the district and division embracing the place" where the underlying state court action was pending (i.e. it was not the U.S. District Court for the Southern District of New York). Failure to remove a case in conformance with the venue provision of 28 U.S.C. § 1441(a) does not create a defect in subject matter jurisdiction. See Peterson v. BMI Refractories, 124 F.3d 1386, 1394 (11th Cir. 1997); see also Caterpillar Inc. v. Lewis, 519 U.S. 61, 76-77, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996); cf. Korea Exch. Bank v. Trackwise Sales Corp., 66 F.3d 46, 49 (3d Cir. 1995) **57 ("[T]he Supreme Court [has] consistently refused to treat the removal statute as imposing independent jurisdictional requirements."). The District Court thus exceeded its authority by remanding proceedings sua sponte on that basis, see FMC Corp., 208 F.3d at 451, and, as a result, we may exercise appellate jurisdiction under 28 U.S.C. § 1291.[1]

[1] Scott was advised by Clerk's letter that we could take summary action in this appeal. Pursuant to Third Circuit L.A.R. 27.4 and I.O.P. 10.6, we may do so if an appeal presents no substantial question. Scott was invited to but did not respond to the Clerk's letter.

While we disagree with its remand rationale, the District Court did reach the correct result. Because it never had subject matter jurisdiction over the removed proceedings, the District Court was obligated to remand, sua sponte, on that basis. See Bromwell v. Mich. Mut. Ins. Co., 115 F.3d 208, 213 (3d Cir. 1997). The case Scott sought to remove to federal court—a petition filed by a state child-welfare organization to initiate child-protective proceedings in state court, see In re: C.M., Docket No. NN-42673-11; File #37961 (N.Y. Fam. Ct.)— plainly arises under state not federal law, cf. 28 U.S.C. § 1331, and there is no amount of money "in controversy," 28 U.S.C. § 1332(a). Cf. Matusow v. Trans-Cty. Title Agency, LLC, 545 F.3d 241, 245 (3d Cir. 2008) (divorce, alimony, and child custody decrees are outside federal jurisdictional bounds). Therefore, we will summarily affirm the District Court's order, albeit on alternative grounds.

Lastly, we will modify the District Court's order so that remand is directed to the right court. The final, operative line of the District Court's order shall be modified to read: "**ORDERED** that this case shall be remanded to the New York County (Manhattan) Family Court." The District Court is instructed to mail a certified copy of the modified remand order to the clerk of the state court, so that federal court jurisdiction may be properly divested. See 28 U.S.C. § 1447(c); Agostini v. Piper Aircraft Corp., 729 F.3d 350, 355-56 (3d Cir. 2013).

**All Citations**

678 Fed.Appx. 56 (Mem)

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 1620981
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

Commonwealth of PENNSYLVANIA, BY
Attorney General Josh SHAPIRO, Plaintiff,

v.

THINK FINANCE, LLC, et al., Defendants.

CIVIL ACTION No. 14-cv-7139
|
Filed 04/04/2018

**Attorneys and Law Firms**

Irv Ackelsberg, John J. Grogan, Peter E. Leckman, Langer
Grogan & Diver PC, Saverio P. Mirarchi, PA Attorney
General, Philadelphia, PA, for Plaintiff.

Arleigh Pritchard Helfer, Ira Neil Richards, Stephen Andrew
Fogdall, Schnader Harrison Segal & Lewis LLP, Richard
L. Scheff, Jonathan P. Boughrum, Montgomery McCracken
Walker & Rhoads LLP, Irv Ackelsberg, Langer Grogan &
Diver PC, Elanor A. Mulhern, Mark J. Levin, Ballard Spahr
Andrews & Ingersoll, Philadelphia, PA, Lewis S. Wiener,
Matthew O. Gatewood, Kristine M. Ellison, Eversheds
Sutherland (US) LLP, Matthew S. Sheldon, Thomas M.
Hefferon, Goodwin Procter LLP, Patrick Daugherty, Edward
D. Gehres, III, Van Ness Feldman LLP, Washington, DC,
Ronald W. Zdrojeski, Eversheds Sutherland (US) LLP,
New York, NY, David Rosenberg, Goodwin Procter LLP,
Boston, MA, Thomas R. Waskom, Hunton & Williams, LLP,
Richmond, VA, Christopher J. Willis, Daniel L. Delnero,
Ballard Spahr LLP, Atlanta, GA, Daniel Shapiro, Dawn
Canty, J. Matthew W. Haws, Patrick M. Smith, Katten
Muchin Rosenman LLP, Chicago, IL, for Defendants.

**MEMORANDUM AND ORDER**

Joyner, District Judge

**\*1** Before the Court are Defendants Think Finance, LLC
(f/k/a Think Finance, Inc.), TC Loan Service LLC, Tailwind
Marketing, LLC, TC Decision Sciences, LLC, and Financial
U, LLC's (collectively, "Think Finance Defendants") Motion
to Transfer Venue (Doc. No. 207), the Commonwealth's
Response in Opposition thereto (Doc. No. 208), Defendant

Rees' Joinder of the Think Finance Defendants' Motion
to Transfer Venue (Doc. No. 212), the Think Finance
Defendants' Reply in Support of their Motion to Transfer
Venue (Doc. No. 213), and all other relevant material and
notices that the parties have submitted (Doc. Nos. 219, 221,
222, 225, and 227). For the following reasons, the Motion is
denied.

**I. BACKGROUND**
The allegations and proceedings are well known to the parties
of this dispute. We do not review them here.

Relevant to the instant decision, we note that on October 23,
2017, the Think Finance Defendants filed voluntary petitions
for relief under chapter 11 of the United States Code before
the United States Bankruptcy Court for the Northern District
of Texas. After doing so, the Think Finance Defendants
moved to transfer this case to the United States District Court
for the Northern District of Texas, where they believe it
will be transferred to the bankruptcy court overseeing their
proceedings under chapter 11.

**II. DISCUSSION**
The Think Finance Defendants and Plaintiff, the
Pennsylvania Office of Attorney General ("OAG"), disagree
on what statute governs the transfer request in this case. The
Think Finance Defendants argue that 28 U.S.C. Section 1412
applies, which provides that "[a] district court may transfer a
case or proceeding under title 11 to a district court for another
district, in the interest of justice or for the convenience of the
parties." 28 U.S.C. § 1412. While, by its terms, the statute
only applies to cases or proceedings "under title 11," courts
have applied Section 1412 more broadly to "relating to" cases
—i.e., to cases that have a conceivable effect on the estate
being administered in bankruptcy. Toth v. Bodyonics, Ltd.,
No. 06-cv-1617, 2007 WL 792172, at \*1-2 (E.D. Pa. Mar.
15, 2007) (citing Howard Brown Co. v. Reliance Ins. Co.,
66 B.R. 480, 482 (E.D. Pa. 1986)). In response, the OAG
argues for the application of the general transfer statue, 28
U.S.C. Section 1404, which subsection (a) provides: "[f]or
the convenience of parties and witnesses, in the interest of
justice, a district court may transfer any civil action to any
other district or division where it might have been brought or
to any district or division to which all parties have consented."
28 U.S.C. § 1404(a).

To start, both Sections instruct us to analyze whether the
transfer is in the "interest of justice." 28 U.S.C. §§ 1404(a),

**Pennsylvania by Shapiro v. Think Finance, LLC, Not Reported in Fed. Supp. (2018)**

2018 WL 1620981

1412. While the "interest of justice" is a fairly amorphous phrase, we generally consider the following factors under both Sections: "(1) plaintiff's choice of forum; (2) defendant's preference; (3) whether the underlying claim arose elsewhere; (4) relative physical and financial conditions of the parties; (5) convenience of witnesses; (6) location of books and records; (7) enforceability of any judgment obtained; (8) practical considerations making trial easy, expeditious or inexpensive; (9) administrative difficulty arising from court congestion; (10) local interest in controversy; (11) public policies in each forum; and (12) familiarity of trial court with applicable law." Toth, 2007 WL 792172, at *2 (noting the considerations under Sections 1404 and 1412 are the same) (citing Jumara v. State Farm Ins. Co., 55 F.3d 873, 879-80 (3d Cir. 1995)); Marino v. Kent Line Int'l, 2002 WL 31618496, at *2 n.1 (E.D. Pa. Nov. 20, 2002) (same) (citing In re Emerson Radio Corp., 52 F.3d 50, 55 (3d Cir. 1995)).

**\*2** Though both Sections may consider similar factors, the Think Finance Defendants insist that the main distinction between Sections 1404 and 1412 is that Section 1412 carries with it a presumption in favor of transferring the case to the district where bankruptcy proceedings are occurring. Krystal Cadillac-Oldsmobile-GMC Truck v. General Motors Corp., 232 B.R. 622, 627 (E.D. Pa. 1999).

Two district courts have considered similar transfer requests in related litigation. Most recently, the Eastern District of Virginia transferred a class action brought by Virginia customers upon motion of Mr. Rees and GPL Servicing, Ltd. Gibbs v. Rees, No. 17-cv-386, 2018 WL 1460705, at *16 (E.D. Va. Mar. 23, 2018). Holding that Section 1412 applied to the transfer request, the court found that Mr. Rees' and GPL Servicing, Ltd.'s indemnification agreements with the Think Finance Defendants rendered the case "related to" the bankruptcy proceedings because the outcome could conceivably have an effect on the bankruptcy estates. Id. at *12-13. The court noted that the economic and efficient administration of the bankruptcy estate was the most important factor considered. Id. at *14. In doing so, the court recognized a presumption when applying Section 1412 in favor of trying cases "related to" a bankruptcy proceeding in the court where the bankruptcy proceedings are pending. Id.

A few months prior to the decision in Gibbs, the District of Montana denied a transfer request from the Think Finance Defendants in another related action brought by the Consumer Financial Protection Bureau for loans issued to Montana residents. CFPB v. Think Finance, LLC, No. 17-cv-127,

2018 WL 734661, at *5 (D. Mont. Feb. 2, 2018). Because the suit was brought by the Consumer Financial Protection Bureau, a federal agency, the court noted that the lawsuit carried the special designation of a "police and regulatory action" under the Bankruptcy Code. Id. at *2-3. The court noted that, as a police and regulatory action, the case was not subject to the automatic stay provision under 28 U.S.C. Section 362(b)(4). To the court, this exemption gave force to the underlying public policy that "police and regulatory actions present concerns more important than the goals of efficiency and maximizing the estate." Id. at *4 (internal quotation omitted). Ultimately, the court denied the transfer request under Section 1404, finding that the application of the presumption to transfer that Section 1412 carries "would contravene the public policy underlying the stay exception." Id. at *2-5.

First, we agree with Gibbs and follow this Court's precedent by applying Section 1412 to the Think Finance Defendants' transfer request. Toth, 2007 WL 792172, at *1-2. The outcome of this case clearly implicates the Think Finance Defendants' bankruptcy estates. As such, this case relates to the Think Finance Defendants' bankruptcy proceedings, and we will therefore analyze their transfer request under Section 1412.

Second, we find that Section 1412's presumption of transfer does not apply to police and regulatory actions, such as this case. It is important to note that the presumption in favor of transfer under Section 1412 cannot be found in the statute. Rather, the presumption has developed throughout case law in which courts were not faced with the competing interest of affording due respect to police and regulatory actions. See e.g., Dearden v. FCA U.S. LLC, 2017 WL 1190980, 2017 U.S. Dist. LEXIS 48751 (E.D. Pa. Mar. 31, 2017); Al's Family Auto. v. Bennett, No. 11-cv-6237, 2012 WL 246303, 2012 U.S. Dist. LEXIS 9353 (E.D. Pa. Jan. 25, 2012); Krystal Cadillac, 232 B.R. 622 (E.D. Pa. 1999).

**\*3** Moreover, we agree with the court in CFPB that the public policy underlying the exception to the automatic stay "generates inherent tension with the public policy underlying the presumption of transfer in [Section] 1412." CFPB, 2018 WL 734661, at *3. Applying a presumption of transfer to police and regulatory actions would also conflict with the public policy underlying Congress' decision to exempt "a civil action by a governmental unit to enforce such governmental unit's police or regulatory power" from 28 U.S.C. Section 1452, which permits the removal of cases

from state court that relate to bankruptcy proceedings in federal court. 28 U.S.C. § 1452(a). Simply put, Congress has favored the interest of permitting states' regulatory and police actions to independently proceed over the interest in centering the administration of the defendant's related bankruptcy proceedings, see 28 U.S.C. Section 1452(a), or the interest in facilitating the most efficient adjudication for the defendant, see 11 U.S.C. Section 362(b)(4). We follow this preference by holding that, when analyzing a motion to transfer a police and regulatory action, Section 1412 does not carry a presumption in favor of transfer.

Lastly, in applying Section 1412, we find that the Think Finance Defendants have failed to carry their burden of demonstrating that transfer is proper. Of course, the burden is on the party seeking transfer under Section 1412 to show by a preponderance of evidence that transfer is in the interest of justice or for the convenience of the parties. Krystal Cadillac, 232 B.R. at 627-28; 28 U.S.C. § 1412. "Absent such a showing, the court will not disturb the choice of forum made by plaintiff, as it should be accorded great deference." Id. at 628.

Regarding the convenience of the parties, we find that both parties will be burdened equally whether we retain this case or transfer it to the Northern District of Texas. The OAG is located in Pennsylvania, and the Think Finance Defendants are resident in the Northern District of Texas. Either way, one side will be litigating on the road. Regarding whether transfer is in the interest of justice, the OAG alleges that the Think Finance Defendants violated Pennsylvania law—not Texas law—by issuing usury loans to Pennsylvania consumers—not Texas consumers. Of course, the consumer witnesses are located in Pennsylvania. And given the volume of lending at issue, Pennsylvania has a significant interest in this litigation. Finally, we find that the plaintiff's identity as the OAG, as an agency of the Commonwealth, weighs heavily in favor of allowing it to litigate within its own state. Ultimately, we find that these factors outweigh those that would arguably lean in favor of transferring the case to the Northern District of Texas.

### III. CONCLUSION
For the following reasons, we deny the Think Finance.

### All Citations

Not Reported in Fed. Supp., 2018 WL 1620981

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Walsh v. Great Atlantic Graphics, Inc., Not Reported in Fed. Supp. (2022)**

2022 WL 4331205

2022 WL 4331205
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

Martin J. WALSH, Secretary of Labor,
United States Department of Labor, Plaintiff,

v.

GREAT ATLANTIC GRAPHICS, INC.,
Frederick Duffy, Jr., Vincent Giarrocco,
Great Atlantic Graphics, Inc. Profit Sharing
401(k) Plan, and Great Atlantic Graphics,
Inc. Employee Benefit Plan, Defendants.

CIVIL ACTION No. 21-3280
|
Filed September 19, 2022

**Attorneys and Law Firms**

Ryan M. Kooi, U.S. Department of Labor, Philadelphia, PA,
for Plaintiff.

<u>**MEMORANDUM**</u>

Schiller, District Judge

 **\*1** Plaintiff, Martin J. Walsh, the Secretary of Labor (the "Secretary"), asserts claims under ERISA against Defendants Great Atlantic Graphics, Inc. (the "Company"), Frederick Duffy, Jr., Vincent Giarrocco, Great Atlantic Graphics, Inc. Profit Sharing 401(k) Plan (the "401(k) Plan"), and Great Atlantic Graphics, Inc. Employee Benefit Plan (the "Health Plan") (collectively, "Defendants") for breach of their fiduciary duties and engaging in prohibited transactions in connection with their administration of 401(k) and health plans for Great Atlantic Graphics, Inc.'s former employees. Defendants waived service but have since failed to timely appear or otherwise respond to the Complaint. The Secretary subsequently requested and obtained an entry of default against the Defendants. Plaintiff now moves for a default judgment against all Defendants. For the reasons that follow, the Secretary's Motion will be granted.

**I. BACKGROUND**

In 1981, the Company established a 401(k) Plan, which allowed employees to make contributions via payroll deductions. (Compl., ECF 1, ¶ 9.) The Company also operated a self-insured Health Plan funded by employer contributions and contributions from employee payroll deductions. (*Id.* ¶ 14.) Both the 401(k) Plan and the Health Plan are employee benefit plans within the meaning of ERISA section 3(3) (*Id.* ¶ 5.) The Company was the Sponsor of both the 401(k) Plan and Health Plan and was named as Plan Administrator in the Plan documents. (*Id.* ¶ 6.) The Company exercised discretionary authority and discretionary control with respect to management of both Plans, and it is not disputed that it is a fiduciary of the Plans within the meaning of ERISA section 3(21). (*Id.*)

Duffy was the Company's "sole owner, President, and a member of the Board of Directors...." (*Id.* ¶ 7.) Giarrocco was its "Treasurer, Controller, and a member of the Board of Directors...." (*Id.* ¶ 8.) Both Duffy and Giarrocco exercised discretionary authority and discretionary control over both Plans and it is not disputed that they are the Plans' fiduciaries within the meaning of ERISA section 3(21). (*Id.* ¶¶ 7-8.)

In 2018, the Company entered Chapter 7 Bankruptcy and ceased operation. (*Id.* ¶¶ 10, 12.) At that time, the former employees who participated in the 401(k) Plan were entitled to distributions. (*Id.* ¶ 11). However, Duffy and Giarrocco did not begin termination of the 401(k) Plan or distribution of the assets until May 10, 2021. (*Id.* ¶ 12). When the Complaint was filed, the 401(k) plan's nineteen participants still had not received distributions from its $3,062,276.00 in assets as of October 31, 2019. (*Id.* ¶¶ 12-13.)

The Health Plan offered medical benefits through an agreement between the Company and QCC Insurance Company d/b/a Independence Administrators ("IA"). "Under the agreement with IA, the Company agreed to forward insurance premiums to IA" to pay medical claims filed by the Health Plan's participants. (*Id.* ¶ 16.) Duffy and Giarrocco had authority to transfer funds to and from the relevant accounts and were signatories on checks sent on the Company's behalf to IA. (*Id.* ¶ 17.) The Complaint alleges that from at least January 1, 2016 through December 31, 2017, when the Health Plan had fifty-five participants, the Company, Duffy, and Giarrocco withheld at least $228,233.90 in intended Health Plan contributions from employees' paychecks, but did not forward those funds to IA; instead, they placed these funds in general accounts associated with the business and used it for other purposes (*Id.* ¶¶ 15, 18-19.) IA demanded payment

**Walsh v. Great Atlantic Graphics, Inc., Not Reported in Fed. Supp. (2022)**

2022 WL 4331205

in November 2017, but the Company did not comply. (*Id.* ¶ 21.) Because of this, IA retracted coverage for 1,340 claims incurred in 2016 and 2017, totaling approximately $463,494.02, which the participants and beneficiaries of the Health Plan were thus billed for instead. (*Id.* ¶¶ 22, 24.)

**\*2** The Secretary filed its Complaint on July 22, 2021. (ECF 1.) Defendants waived service on August 22, 2021. (ECF 3-7.) On November 12, 2021, pursuant to an Order from Judge Tucker (ECF 8), the Secretary informed the Court that it had "engaged in discussion with Defendants and their representative on multiple occasions, and they have indicated that they will not be entering appearances or mounting any defense in this matter." (ECF 9.) The Secretary requested a default on December 17, 2021 (ECF 10) and a default was entered on March 2, 2022. This case was reassigned from Judge Tucker to Judge Schiller on June 29, 2022. (ECF 11.) On August 3, the Secretary moved for a default judgment, seeking, among other relief, to: (1) remove Defendants as fiduciaries of the Plans; (2) authorize the Secretary to appoint an independent fiduciary of the Plans; and (3) enjoin Defendants from serving as fiduciaries of ERISA-covered plans in the future. (ECF 12.)

## II. STANDARD OF REVIEW

After a default is entered, [Fed. R. Civ. P. 55(b)(2)](#) allows a district court to enter a default judgment against a properly served defendant who fails to a file a timely responsive pleading. *[Anchorage Assocs. v. V.I. Bd. of Tax Revenue](#)*, 922 F.2d 168, 177 n.9 (3d Cir. 1990). An entry of default, however, does not automatically entitle the non-defaulting party to a default judgment. *[Hritz v. Woma Corp.](#)*, 732 F.2d 1178, 1180-81 (3d Cir. 1984). Rather, the decision to enter a default judgment is "left primarily to the discretion of the district court." *[Id.](#)* at 1181.

## III. DISCUSSION

### A. Default Judgment

"Three factors control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *[Chamberlain v. Giampapa](#)*, 210 F.3d 154, 164 (3d Cir. 2000); *[United States v. $55,518.05 in U.S. Currency](#)*, 728 F.2d 192, 195 (3d Cir. 1984). "However, when a defendant has failed to appear or respond in any fashion to the complaint, this analysis is necessarily one-sided; entry of default judgment is typically appropriate in such circumstances at least until the defendant comes forward with a motion to set aside the default judgment pursuant to [Rule 55(c)](#)." *[Mount Nittany Med. Ctr. v. Nittany Urgent Care, P.C.](#)*, No. 11-622, 2011 WL 5869812, at \*1 (M.D. Pa. Nov. 22, 2011) (citing *[Anchorage Assocs.](#)*, 922 F.2d at 177 n.9).

All three factors weigh in favor of granting a default judgment against Defendants. First, a plaintiff will be prejudiced absent a default judgment when a defendant fails to respond to the plaintiff's claims because the "plaintiff will be left with no other means to vindicate his or her claims." *[United States v. Vo](#)*, No. 15-6327, 2016 WL 475313, at \*3 (D.N.J. Feb. 8, 2016). Here, Defendants did not timely respond to the Secretary's claims. They have also since made clear to the Secretary "that they will not be entering appearances or mounting any defense in this matter." (ECF 9.) Absent a default judgment, Defendants' refusal to engage portends an indefinite delay. *See [Vo](#)*, 2016 WL 475313, at \*3.

Second, "[a] claim, or defense, will be deemed meritorious when the allegations of the pleadings, if established at trial, would support recovery by plaintiff or would constitute a complete defense." *[Poulis v. State Farm Fire & Cas. Co.](#)*, 747 F.2d 863, 869-70 (3d Cir. 1984). Here, the Court is unable to consider whether Defendants have any litigable, meritorious defenses because they never answered or responded to the Complaint or otherwise participated in this litigation. *See [Vo](#)*, 2016 WL 475313, at \*3; *[United States v. Fridman](#)*, No. 21-12090, 2022 WL 1541549, at \*3 (D.N.J. May 16, 2022).

Third, a defendant's "failure to answer or otherwise respond to the Complaint, without providing any reasonable explanation, permits the Court to draw an inference of culpability on the its part." *[United States v. Cruz](#)*, No. 20-3903, 2021 WL 1884862, at \*2 (D.N.J. May 11, 2021); *see also Crocs, Inc. v. Dr Leonard Healthcare Corp.*, No. 21-13583, at \*4 (D.N.J. Aug. 30, 2022). Here, Defendants have not answered or responded to the Complaint and, in fact, have informed the Secretary that they do not intend to do so. The Court therefore infers culpability on their part. *See [Local Union No. 98 Int'l Bhd. of Elec. Workers v. Chester Cnty. Elec., Inc.](#)*, No. 12-3440, 2013 WL 5567446, at \*2 (E.D. Pa. Oct. 9, 2013) ("[W]hile Defendant[s have] failed to engage in this litigation, the docket indicates that [they were] properly served. Therefore, the fault rests with Defendant[s] for [their] failure to participate in this litigation.").

**Walsh v. Great Atlantic Graphics, Inc., Not Reported in Fed. Supp. (2022)**

2022 WL 4331205

**\*3** The Court will enter default judgment accordingly.

## B. Relief Requested

"A federal court enforcing fiduciary obligations under ERISA is ... given broad equitable powers to implement its remedial decrees." *Delgrosso v. Spang & Co.*, 769 F.2d 928, 937 (3d Cir. 1985). ERISA section 502(a)(5) authorizes the Secretary to bring an action to "enjoin any act or practice which violates any provision of this subchapter." 29 U.S.C. § 1132(a)(5)(A). The Secretary may also "obtain other appropriate equitable relief" to redress violations of the statute. *Id.* § 1132(a)(5)(B); *cf. id.* § 1132(a)(3)(B) (permitting participants, beneficiaries, or fiduciaries to sue "to obtain other appropriate equitable relief"). The Supreme Court and the Third Circuit analyze section 502(a)(5) claims similarly to section 502(a)(3) claims due to the identical language of the statute. *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 260 (1993) (holding "language used in one portion of a statute (§ 502(a)(3)) should be deemed to have the same meaning as the same language used elsewhere in the statute (§ 502(a)(5))"); *Nat'l Sec. Sys. Inc. v. Iola*, 700 F.3d 65, 88 (3d Cir. 2012) ("First, because § 502(a)(5) mirrors § 502(a)(3), we relied heavily on the dicta in *Mertens* addressing the scope of § 502(a)(3).").

The Secretary's Motion seeks: (1) imposition of a $338,452.63 surcharge on Defendants, jointly and severally, to compensate the Health Plan's participants and beneficiaries for their medical expenses and other losses resulting from Defendants' fiduciary misconduct;[1] (2) authority to appoint an independent fiduciary to manage and administer the 401(k) and Health Plans, including by asserting claims on behalf of the Plans and distributing benefits to the Plans' participants and beneficiaries; (3) an order compelling Defendants' cooperation with the independent fiduciary's efforts to administer the Plan by providing the independent fiduciary with all records related to the Plans; (4) removal of Duffy, Giarrocco, and the Company as fiduciaries of the Plans; (5) to enjoin Duffy, Giarrocco, and the Company from serving as trustee, fiduciary, advisor, or administrator to any employee benefit plan covered by ERISA in the future; and (6) to enjoin Duffy, Giarrocco, and the Company from future violations of Title I of ERISA.

[1] The Secretary filed a Declaration from U.S. Department of Labor Investigator Brannon Ottley [Ottley Decl.] to support its Motion. (ECF 12, Ex. A.) According to Ottley,

as of August 1, 2022, the unpaid Health Plan claims total approximately $338,452.63.

## 1. Surcharge

In *CIGNA Corporation v. Amara*, the Supreme Court interpreted the "other appropriate equitable relief" language of ERISA section 503(a)(3) to authorize district courts to issue the equitable remedy of surcharge. 563 U.S. 421, 439, 443-44 (2011). Surcharge is an equitable remedy—even though it is in the form of monetary relief—for breaches of trust "committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary." *Id.* at 441-42. To impose a surcharge on Defendants under section 502(a)(3), the Secretary must make out a showing of "actual harm" and causation. *Id.* at 444. It follows that the same showing should allow a surcharge to be imposed as equitable relief under ERISA section 502(a)(5). *See Mertens*, 508 U.S. at 260; *Iola*, 700 F.3d at 88.

**\*4** Actual harm may consist of detrimental reliance or the loss of an ERISA-protected or common-law trust right. *Id.*; *see also Cunningham v. Wawa, Inc.*, 387 F. Supp. 3d 529, 541-42 (E.D. Pa. 2019) ("Plaintiffs need not show ... detrimental reliance to seek reformation and surcharge under § 502(a)(3)."). ERISA Section 404(a) incorporates the fiduciary standards of trust law. *Sec'y of Labor v. Doyle*, 675 F.3d 187, 202 (3d Cir. 2012). "[L]ying is inconsistent with the duty of loyalty owed by all fiduciaries and codified in section 404(a)(1) of ERISA." *Varity Corp. v. Howe*, 516 U.S. 489, 506 (1996) (citation and internal quotation omitted). The duties of an ERISA fiduciary include the common law duty of loyalty. *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 570-71 (1985). The Third Circuit has said that in some circumstances an ERISA fiduciary has an affirmative obligation to disclose material information even absent a plan beneficiary's request. *Glaziers & Glassworkers Union Loc. 252 Annuity Fund v. Newbridge Sec., Inc.*, 93 F.3d 1171, 1181 (3d Cir. 1996); *see also Bixler v. Cent. Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1300 (3d Cir. 1993). A paradigmatic situation where disclosure may be required is when a beneficiary would have no reason to suspect he should make an inquiry because he is engaged in something that "appear[s] to be a routine matter." *Glaziers*, 93 F.3d at 1181.

Here, the Secretary has shown it is appropriate to impose an equitable surcharge in the amount of medical benefits that the Health Plan did not cover when its participants

**Walsh v. Great Atlantic Graphics, Inc., Not Reported in Fed. Supp. (2022)**

2022 WL 4331205

received medical services despite their mistaken belief that it would. Labor Department Inspector Ottley states that Great Atlantic, Duffy, and Giarrocco failed to inform the participants that they had not forwarded at least $228,233.90 in premium payments to IA. (Ottley Decl. ¶ 3(i).) As a result, IA retracted 1,340 claims made between April 12, 2016 and October 31, 2017, foisting the cost onto the Health Plan's unwitting participants. (*Id.* ¶ 3(j).) The Company's Health Plan participants reasonably expected it to pay for their medical care, a routine activity that implicates a fiduciary's duty to affirmatively disclose. The loss of coverage was material information and the duties of loyalty and disclosure imposed an affirmative obligation on the Health Plan's fiduciaries—Defendants—to disclose it to the participants. Defendants' failure to do so constitutes the actual harm *CIGNA* requires. 563 U.S. at 444; *see also Glaziers*, 90 F.3d at 1181.

To find otherwise would create an unworkable scenario where plan participants would have to inquire repeatedly whether fiduciaries made timely premium payments to the insurance company before seeking any medical treatment—and the fiduciaries would need to respond to voluminous inquiries.

The essence of a fiduciary relationship is utmost loyalty and diligent care. Congress did not intend for ERISA to require beneficiaries to exercise greater diligence than their fiduciaries. *See Varity Corp.*, 516 U.S. at 507 (finding Congress intended for ERISA's fiduciary standards to protect individuals harmed by a breach). "[T]he fundamental purpose of [ERISA] is the 'enforcement of strict fiduciary standards of care in the administration of all aspects of pension plans and promotion of the best interests of participants and beneficiaries.' " *Bixler*, 12 F.3d at 1298 (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 158 (1985) (Brennan, J., concurring)).

Therefore, the Court will impose a surcharge of $338,452.63 on Duffy, Giarrocco, and the Company, jointly and severally.

**2. Fiduciary Removal and Appointment of an Independent Fiduciary**

A court's equitable power also includes the authority to remove fiduciaries who breach their fiduciary obligations. *Perez v. Kwasny*, No. 14-4286, 2016 WL 558721, at *3 (E.D. Pa. Feb. 9, 2016); *see also* 29 U.S.C. § 1009(a) (authorizing "equitable or remedial relief as the court may

deem appropriate" for breach of fiduciary duty including "removal" of a fiduciary). Given Defendants' failure to comply with their fiduciary duties, the Court will order the removal of the Company, Duffy, and Giarrocco as Plan fiduciaries and authorize the Secretary to appoint an independent fiduciary. *See Walsh v. Satori Grp., Inc.*, No. 20-3906, 2021 WL 2072237, at *8 (E.D. Pa. May 24, 2021) (removing fiduciaries for breach of fiduciary duties and granting request for appointment of an independent fiduciary).

**\*5** Defendants shall be responsible for all costs and fees associated with the independent fiduciary. *See Kwasny*, 2016 WL 558721, at *3 (finding it "just" that defendants "pay the costs associated with" appointing a fiduciary because "[t]his is an expense that would not have accrued but for the [defendants'] breaches"). In addition, Defendants will be required to provide the independent fiduciary with all records and other material relevant to Plan administration. *See Walsh*, 2021 WL 2072237, at *9.

**3. Injunction**

A court may also "bar serious ERISA violators from serving as fiduciaries or service providers to ERISA-covered plans" in the future. *Kwasny*, 2016 WL 558721, at *4. "Great Atlantic, Duffy, and Giarrocco retained and commingled ... Health Plan assets within the Company's general banking accounts so these amounts could be used for purposes not related to the Health Plan." (Compl., ¶ 18.) Based on the uncontested allegations in the Complaint, the Company, Duffy, and Giarrocco failed to fulfill their fiduciary duties and "used Plan assets for [their] own benefit. In that [they] cannot be entrusted managing ERISA-covered plans or their assets, a permanent injunction barring" them from serving as fiduciaries in the future is justified. *Kwasny*, 2016 WL 558721, at *4.

**IV. CONCLUSION**

For the reasons stated above, the Court grants the Secretary's Motion for a default judgment, judgment will be entered in his favor and against Defendants, and the Court will enter an Order awarding the relief the Secretary seeks.

An Order consistent with this Memorandum will be docketed separately.

**Walsh v. Great Atlantic Graphics, Inc., Not Reported in Fed. Supp. (2022)**

2022 WL 4331205

**All Citations**

Not Reported in Fed. Supp., 2022 WL 4331205

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.